Frank RELERFORD, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17963.

United States Court of Appeals
Ninth Circuit.

Nov. 16, 1962.

Frank Relerford, in pro. per.

Warren Colver, U. S. Atty., Weyman I.
Lundquist, Patrick Thomas Moran, Asst.
U. S. Attys., Anchorage, Alaska, for
appellee.

Before MERRILL, BROWNING and
DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

Relerford appeals from the judgment
upon his conviction by a jury of a viola-
tion of section 2421, Title 18 U.S.C. This
is the second appeal in this case. In the
first appeal we reversed the conviction
on the ground that the court had, for reas-
sons stated in our opinion, denied him
an opportunity to secure counsel of his
own choice to assist him in his defense.
Releford [sic] v. United States, 288 F.2d
298, decided March 2, 1961. On this ap-
peal, Releford makes five contentions
which we consider seriatim.

1. He claims that he was not
afforded a speedy trial as required by the
sixth amendment to the Constitution of
the United States. No such contention

was made on the prior appeal, and it is apparent that his claim can relate only to what happened after the decision in that appeal. So far as the record shows, the contention was never raised below, and this would be a sufficient basis for refusing to consider it here. (See Campodonico v. United States, 9 Cir., 1955, 222 F.2d 310, 316, cert. denied, 350 U.S. 831, 76 S.Ct. 65, 100 L.Ed. 742, and cases there cited) However, because Relerford proceeded in pro. per., both below and here, we consider the point.

The record shows that on June 9, 1961, the matter was set for trial on October 5, 1961. So far as appears, no objection was made. No counsel had appeared for Relerford and therefore, on September 12, the court ordered that Relerford, who was on bail, appear September 14 for the purpose of ascertaining whether he had counsel. On that day he did appear and stated that he did not have counsel and asked to have the matter continued for another 30 or 40 days in order to enable him to retain counsel. The court offered to appoint counsel but Relerford stated that he wished to have a few more days in which to obtain counsel. The court granted him until September 18. Counsel retained by Relerford entered an appearance on that day, and on the next day filed a motion to continue the matter for six weeks. On the following day, the 20th, the court heard counsel in support of his motion and after considerable discussion, continued the trial date from October 5 to November 1, which was agreeable to counsel. ("I think that would be adequate; I am sure it should be.")

It appears that Relerford indicated to his counsel a willingness to withdraw his plea of not guilty and enter a plea of guilty, and on September 23 the court continued the matter from November 1 until November 7, presumably (the record is silent on this) because this matter was under consideration. On November 6 the case was called, in the words of the court, "to take up the matter of change of plea." His counsel then stated that Relerford did not desire to change his plea, although he (counsel) had represented to the United States Attorney that such would be the case. Relerford stated that he was not dissatisfied with his attorney, and that he was willing to accept his advice, except that he would not change his plea. His counsel, because of what had happened, withdrew. It also appeared that because of the representations that his counsel had made to the United States Attorney, the latter had excused the witnesses that had been summoned for the trial, at least one of them coming from as far away as Louisiana. The court then set the matter down for December 11, stating to Relerford "that will give you ample time to get another attorney." To this Relerford made no objection other than to thank the court.

On November 28 the court ordered Relerford to appear on December 1 "and advise the Court that he has counsel for the trial of said case; otherwise the Court will appoint counsel to represent him." Relerford did appear on December 1 and stated that he did not have counsel. He seemed to have the notion that he had a constitutional right to have the counsel he had previously retained, and who had withdrawn, act for him in the trial. The court advised him that it could not force an attorney upon him, that he had had ample time to obtain counsel, and that if he were a pauper he could execute the necessary oath and the court could appoint counsel. Relerford said that he could not file a pauper's oath and was instructed to be ready for trial on the 11th with or without an attorney. The matter was tried beginning on the 11th.

■ It is apparent that the delay in the trial was caused entirely by Relerford or by counsel retained by him. The point is without merit.

■ 2. It is claimed that Relerford was not afforded assistance of counsel for his defense, as required by the sixth amendment to the Constitution of the United States. We have recited the history of the court's efforts to assure that he would have counsel. However, at the trial he appeared without counsel and at

the opening of the trial the court made the following statement:

> "The record may show the defendant appearing here without counsel, but this is after the repeated efforts of the defendant to obtain counsel and twice having been granted a continuance in order that he may obtain counsel. The record may also show that he has not desired the Court to appoint counsel for him but that there is appearing for him this morning by leave of the Court Mr. George C. Andersen, who had been a practicing attorney at one time and who is appearing here as his best friend and who will represent him and act as his advisor. We are pleased to have Mr. Andersen help us out in that particular. He may so appear without being admitted to practice in this court."

The court then asked Relerford if he was ready and he answered "yes." Relerford conducted his own trial, cross-examined witnesses, and on the afternoon of the first day of the trial asked for a continuance until the next morning in order to prepare to put on his own evidence, the government having rested. This request was granted. The next day, he made his opening statement, called some witnesses on his own behalf, and was given time to obtain the presence of another witness, including the offer of a subpoena. He finally declined to produce the witness, and was then given the opportunity to offer the same witness' testimony by offering the transcript of the former trial, and declined to do so. The trial then concluded, following argument by the Assistant United States Attorney and by Relerford. Andersen, who was referred to in the court's opening statement, was present throughout the trial and available for consultation with Relerford.

We think it apparent from the record that after the mandate came down from this court, and until the case finally went to trial, Relerford was engaging in a cat and mouse game with the court, stoutly maintaining on the one hand that he could not take a pauper's oath to obtain court-appointed counsel, and at the same time not obtaining counsel for himself. The constitutional guarantee of the right of a defendant to have the assistance of counsel is not thus to be turned into a weapon whereby a defendant can prevent his case from ever being brought to trial. As we stated in our opinion on the former appeal (288 F.2d at p. 301): "An accused's right to select his own counsel cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice." There is no merit in Relerford's second point.

■ 3 and 4. It is contended that the government failed to prove that Relerford had procured the airline ticket furnished to the woman who was transported from Seattle to Anchorage, and that Relerford was not "truly" confronted with the witnesses against him, as required by the sixth amendment to the Constitution of the United States. The government proved that Relerford asked the woman to come to Alaska for immoral purposes, that she did receive the ticket, that she used it to come from Seattle to Anchorage, that Relerford met her at the plane, and that he later told her he had bought the ticket.

Relerford's contentions are based upon the fact that the government did not produce the ticket agent who sold the ticket. On its face, the ticket, which was introduced in evidence, purports to have been sold to one McFadden. The government did produce McFadden, who testified that he was an acquaintance of Relerford and that he did not purchase the ticket and knew nothing whatever about the transaction. It is clear that from the foregoing the jury could infer that it was Relerford who had procured the ticket, and it was not necessary for the government to produce the person who sold the ticket. It was as open to Relerford to produce that witness as it was to the government, and he neither produced her, nor in any way sought the aid of the court to have her produced. Relerford's third and fourth points are without merit.

5. The last contention is that it was error to admit the ticket in evidence. The woman who used the ticket identified it, testified that she received it after being asked by Relerford to come to Alaska, and that she used it. The ticket was clearly admissible and there was no error. Any conflict in the evidence, and any doubt as to the woman's veracity, were resolved by the jury against Relerford. He had a fair trial.

Affirmed.