**UNITED STATES** of America ex rel.
Paul D. O'NEILL

v.

Alfred T. RUNDLE, Warden State Correctional Institution, Philadelphia, Pennsylvania.

Misc. No. 2634.

United States District Court

E. D. Pennsylvania.

June 10, 1964.

Lewis P. Mitrano, Philadelphia, Pa. (Court appointed), and Paul D. O'Neill, in pro. per., for relator.

John F. Hassett, Asst. Dist. Atty., for County of Philadelphia, Philadelphia, Pa., for respondent.

GRIM, District Judge.

In this habeas corpus petition, a state prisoner contends that he was denied the right to assistance of counsel at his trial in 1950. Relator has exhausted his state remedies: Commonwealth ex rel. O'Neill v. Banmiller, 27 Pa.Dist. & Co.R.2d 757 (1962), aff'd, 198 Pa.Super. 611, 184 A. 2d 296 (1962), allocatur denied by Pa.Supreme Court on November 23, 1962 at No. 131 Allocatur Docket, No. 4.

This court appointed counsel to represent relator and ordered that a hearing be held to determine the relevant facts. Relator testified at this hearing and the original bills of indictment and notes of testimony of the 1950 trial were made a part of the record in this proceeding.

On June 19, 1950, O'Neill at his arraignment in Philadelphia before Judge Vincent A. Carroll pleaded not guilty to the bills of indictment dated May 31, 1950, charging him with robbery, larceny of automobile, receiving stolen goods, carrying a concealed deadly weapon, violation of the Uniform Firearms Act and assault with intent to kill. At this arraignment, O'Neill told Judge Carroll that he did not have a lawyer, but wanted to obtain the services of one. Judge Carroll thereupon continued the hearing for one week in order to enable O'Neill to get a lawyer. During this week, O'Neill wrote four letters to his family and friends seeking money in order to get a lawyer. On June 26, 1950, O'Neill again appeared before Judge Carroll who, upon being informed that O'Neill had been unable to obtain the services of an attorney by his own efforts, appointed, and O'Neill accepted, a Mr. Alessandroni of the Defender Association's office to represent the defendant. After a short conference with O'Neill, who expressed the conviction that he was innocent and had an alibi defense, Mr. Alessandroni requested and Judge Carroll granted, a thirty day continuance of the trial. Some two or three weeks later Alessandroni met with O'Neill who was incarcerated awaiting trial. According to the testimony of O'Neill, Alessandroni suggested at this meeting that O'Neill plead guilty to the charges against him, which O'Neill was unwilling to do.

On September 18, 1950, the case was called for trial before Judge Raymond MacNeille at which time the following colloquy took place:

"THE COURT: * * * Have you tried to engage a lawyer?

"THE DEFENDANT: Yes, sir.

"THE COURT: What did you do along that line?

"THE DEFENDANT: Well, since my last appearance in court I have written letters.

"THE COURT: To whom did you write?

"THE DEFENDANT: To different friends. And I haven't gotten any reply and likewise visits since my last appearance in court. I didn't get any visits.

"THE COURT: Have you any money to pay a lawyer?

"THE DEFENDANT: I think I can get it.

"THE COURT: I didn't ask you that. Do you have any money to pay a lawyer?

"THE DEFENDANT: No, not offhand.

"THE COURT: In writing to these friends were you asking them for money so you could get a lawyer?

"THE DEFENDANT: Yes, I was.

\* \* \* \* \* \*

"THE COURT: Mr. Alessandroni, \* \* \* [t]he case has been out several times and each time he comes out he says he wants to get a lawyer, but there has been no real effort made to get a lawyer. Have you looked into the matter at all?

"MR. ALESSANDRONI: If Your Honor please, we are very familiar with the case. We spoke with Mr. O'Neill on several occasions, and at one time we were asked by Judge Carroll to represent him. We did go down and speak to him and wanted to represent him. He kept insisting he was going to get his own lawyer, and finally he said he didn't want the public defender under any circumstances. So in view of that we naturally dropped out of it.

"THE COURT: Are you satisfied to have the public defender represent you?

"THE DEFENDANT: No, Your Honor. I want my own lawyer.

"THE COURT: You haven't gotten any, and you have been given ample opportunity to get one.

"MR. McCLAIN [Assistant District Attorney]: He has been given three months.

"THE COURT: The case will have to be tried. The Court will appoint a lawyer for you if you wish the Cour (sic) to do it. Do you wish the Court to appoint a lawyer for you?

"THE DEFENDANT: No, Your Honor. I don't want a public defender.

"THE COURT: Can you give me any reason why you don't want the public defender?

"THE DEFENDANT: Well, Your Honor, yes. I can't confide in him to begin with. And I had spoken to this man here when he was appointed by Judge Carroll, and he told me to enter a guilty plea, and I am innocent of these crimes and I don't want to. That is my reason for not wanting the public defender.

"MR. ALESSANDRONI: Pardon me, Your Honor. Just for the record, I never advised this defendant to plead guilty at any time. As a matter of fact he told me he had a defense and I asked Judge Carroll to continue the case. That is on the record. He told me he had a defense that he was some place else; he had an alibi defense. I said, it will take weeks for us to defend you and find out and check that. And I said, if you want us to defend you we will have to ask the Court for a continuance.

"And later on something happened, I don't know what, but he got the impression that we weren't going to give him a good defense, and he said he didn't want us under any circumstances. We don't feel that we want him either, Your Honor.

"MR: McCLAIN: That was back in June. That is three months ago. This is just going on indefinitely, Your Honor. We have a number of citizens who are leaving their businesses and coming here to have the case tried. I would like to call them and see if they are here, sir.

\* \* \* \* \*

"THE COURT: O'Neill, from what the public defender said when you were there, he attempted to make some investigations for you that would take some time, and then you showed the desire not to have him. But under the circumstances, the law doesn't require me to force a lawyer on a defendant, but I want to offer you every opportunity to have one, and you have had plenty of chance to get one if one is available for you. I will now appoint another lawyer for you, a member of the

Bar who will serve you without charge, Mr. Berkowitz * * *."

After consultation with O'Neill, Mr. Berkowitz informed the court that he had advised O'Neill to plead guilty, and that O'Neill had refused. Under these circumstances, Mr. Berkowitz requested leave to withdraw from the case, which request Judge MacNeille granted.

The court then said:

"THE COURT: Mr. O'Neill, I have tried to get lawyers for you and that has proven to be impossible. You may not mean your attitude to have this effect, but the effect of that attitude, whether you mean it or not, would be that you would never be tried. And if I let it go that way you would be in prison for the rest of your life, which is unfair from both the point of view of—

"THE DEFENDANT: I want to stand trial.

"THE COURT: What?

"THE DEFENDANT: I want to stand trial. I am not going to plead guilty for anyone because I am not guilty of these crimes.

"THE COURT: I don't want you to plead guilty. I am discussing a representation by counsel, and it is the duty of counsel to give you whatever his honest advice is.

"Now, so as to help the Court I am going to ask Mr. Alessandroni to sit alongside of you, and I have suggested to him to make any objections to anything that he thinks ought to be objected to as a lawyer, as an aid to the Court * * *."

Judge MacNeille then recessed court for the day and ordered that a new jury be impanelled. On the following day, O'Neill told the judge that he did not want Mr. Alessandroni to represent him "in any way, shape or form." At this point, Alessandroni withdrew from the

case and the court ordered the prosecution to begin its case.

Although the trial judge on his own motion sustained demurrers to eight of the eighteen bills on which O'Neill was tried, an examination of the notes of testimony of the trial clearly demonstrates that O'Neill was handicapped by the absence of counsel to assist him. Leading questions were asked and irrelevant testimony introduced without objection. Evidence of certain auto thefts was introduced without objection when there was no evidence to implicate O'Neill in the thefts.[1] O'Neill at the time of the trial was 24 years old and possessed only a fifth grade education. His prior court room experience was limited to appearances before the Juvenile Court. He did not cross-examine any witnesses or offer any evidence in his own defense at the trial. The jury returned a verdict of not guilty on one bill and guilty on the nine other bills submitted to them. Judge MacNeille suspended sentence on one bill and imposed sentences aggregating thirty-one and a half to sixty-three years on the other bills. No appeal was taken from these convictions.

■ While O'Neill was handicapped by the absence of counsel at his trial, this fact will avail him nothing in this habeas corpus proceeding if the absence of counsel was his own doing.

The issues before this court can be viewed from two aspects: (1) was the trial judge under the facts of this case constitutionally obligated to continue the case in order to give the defendant more time to secure the services of an attorney of his own choosing? (2) was the trial judge constitutionally obligated to offer to the defendant the free services of counsel other than Mr. Alessandroni or Mr. Berkowitz?

■ It is axiomatic that a defendant is constitutionally entitled to a reasonable opportunity to secure counsel of

1. Demurrers to these charges were sustained by the trial judge on his own mo-

tion, but the jury was permitted to hear the testimony without objection.

his own choice.[2] Consequently the denial by a court of a trial continuance in order to give the defendant sufficient time to engage an attorney will in appropriate circumstances constitute a denial of due process.[3] However, on the facts of this case it is clear that the trial judge did not abuse his discretion in requiring that the case proceed without counsel to represent the defendant. The defendant had more than three months in which to obtain the services of an attorney. There is no indication here that he was prevented or handicapped in communicating with any attorney that he desired to engage. The case was continued several times. The defendant's right to select his own counsel cannot be insisted on in such a manner as will obstruct the orderly disposition of the business of the courts.[4] I find that the trial judge considering both the interests of the defendant and the need to expedite the business of the court did not abuse his discretion in refusing defendant additional time to obtain his own counsel

■ Likewise I find that the constitutional obligation to provide an indigent defendant with the services of counsel was satisfied in this case when Mr. Alessandroni, a capable and available attorney, was appointed as defendant's counsel.

■ The court is not concerned here with the obligation of a state to appoint counsel for an indigent (Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799 (1963)). In this case, counsel was appointed for the defendant almost three months before the trial when it appeared that the defendant would be unable to obtain the services of an attorney on his own initiative. The problem here is the determination of what duty if any the state court has to obtain new counsel when the defendant will not accept the qualified counsel who originally had been obtained by the trial court. O'Neill claimed at trial and in this proceeding that he did not want Alessandroni to represent him because Mr. Alessandroni had told him to plead guilty. Alessandroni did not testify at the habeas corpus hearing, but at the trial he vehemently denied that he ever advised O'Neill to plead guilty. Moreover, the trial judge told O'Neill that he did not have to plead guilty in order to secure the services of counsel. Although I find that Alessandroni did not advise O'Neill to plead guilty, it is likewise clear from the record that O'Neill was unsatisfied with Alessandroni as his counsel. However, the right of an indigent defendant to be represented by counsel does not confer on the indigent the power to compel a court to continue obtaining counsel for a defendant indefinitely until counsel is obtained who will satisfy the defendant. Tibbett v. Hand, 294 F.2d 68, 73 (10th Cir. 1961). What the Constitution does provide is that every man shall have competent counsel to defend him if he so desires. Mr. Alessandroni was such competent counsel. While it is true that this court must "'indulge every reasonable presumption against waiver of fundamental constitutional rights * * *".[5] the record of this case clearly shows that O'Neill affirmatively acquiesced in the withdrawal of Alessandroni as his coun-

2. Powell v. Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L. Ed. 4 (1954); MacKenna v. Ellis, 263 F. 2d 35, 40 (5th Cir. 1959); see United States v. Bergamo, 154 F.2d 31, 34 (3d Cir. 1946).

3. Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1 (1954); Lee v. United States, 98 U.S. App.D.C. 272, 235 F.2d 219 (1956); United States v. Johnston, 318 F.2d 288 (6th Cir. 1963).

4. MacKenna v. Ellis, 263 F.2d 35, 40 (5th Cir. 1959).
 See Relerford v. United States, 309 F. 2d 706, at 708 (9th Cir. 1962) where it was said: "The constitutional guarantee of the right of a defendant to have the assistance of counsel is not * * * to be turned into a weapon whereby a defendant can prevent his case from ever being brought to trial."

5. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

sel. Although the trial judge clearly pointed out that O'Neill need not plead guilty in order to have the assistance of counsel, O'Neill persisted in his refusal to have Alessandroni represent him "in any way, shape or form." [6]

 Relator has the burden of demonstrating by the preponderance of the evidence that he did not completely and intelligently waive his right to counsel.[7] Relator has not met this burden.

The other points raised by relator in this petition have been thoroughly considered and discussed by Judge Sloane in his opinion denying relator's habeas cor-

pus petition to the Court of Common Pleas No. 2 of Philadelphia County, 27 Pa.Dist. & Co.R.2d 757 (1962). I agree with Judge Sloane that these other allegations of constitutional infringement are without merit.

The court wishes to express its gratitude to Lewis P. Mitrano, Esq. of the Philadelphia Bar who acted as counsel for relator throughout these proceedings.

### ORDER

And now, June 10, 1964, the petition of Paul D. O'Neill for a writ of habeas corpus is denied with prejudice.

---

**6.** Notes of Testimony of Trial, p. 12.

**7.** Johnson v. Zerbst, 304 U.S. 458, 469, 58 S.Ct. 1019 (1938); Carnley v. Cochran, 369 U.S. 506, 516, 517, 82 S.Ct. 884, 8 L. Ed.2d 70 (1962).