[No. 9767–9–I.   Division One.   September 20, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. JIMMY CURTIS JOHNSON, *Appellant.*

16

*R. Clark Cavin,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Ruth Robinson, Deputy,* for respondent.

Durham, A.C.J.—Jimmy Curtis Johnson appeals his conviction of burglary in the first degree. At about 2 or 3 a.m. on July 29, 1980, Eldred and Brenda Simpson were awakened by an intruder in their apartment bedroom. Brenda saw him going through Eldred's pants pockets. Eldred jumped from bed and struggled with the intruder, who hit Eldred several times. The struggle carried them out of the apartment and down the stairs. Eldred retreated to clothe himself, then he and a neighbor pursued the intruder while Brenda called police. Eldred found the man in the alley and cornered him, and the man threatened to kill him. Police arrived and arrested the intruder, who was ·identified as Jimmy Curtis Johnson. Johnson represented himself at trial. On appeal, he claims that he was deprived of his constitutional right to counsel.

The following is a brief chronology of Johnson's seven court appearances prior to trial:

<u>August 15</u> (Judge T. Patrick Corbett): John Muenster of

the Public Defender's Office appeared at arraignment for Johnson, waived the reading of the information and entered a plea of not guilty. The court continued the matter to August 29 to confirm counsel, set a trial date, and conduct an omnibus hearing. Prior to the arraignment, Johnson received a letter advising him to contact the Office of Public Defense if he needed assigned counsel.

August 29 (Judge Jerome M. Johnson): At this and all further hearings, Johnson appeared without counsel. Johnson stated that he wanted an attorney and that he had been to the Office of Public Defense. He was told there that because his income was too high, he was ineligible for appointed counsel. Johnson said that he had an attorney, but could not remember his name. Trial was set for October 29, and the omnibus hearing was continued to September 5.

September 5 (Judge Frank D. Howard): The prosecutor informed Johnson that it was of "paramount importance" that he obtain counsel. Johnson said that he had not contacted an attorney because of the cost, and that he did not have $700 to pay at once.

THE COURT: So it is your intention at this time to proceed to trial without an attorney?
MR. JOHNSON: Yes.

. . .

THE COURT: . . . I want to be certain at this time that . . . it's your intention to proceed to trial without an attorney.
MR. JOHNSON: Well, I'm trying to get one. Like I said, I'm trying to get one is all.

After this somewhat contradictory exchange, the trial court continued the hearing to allow Johnson to obtain counsel, warning him that the matter had already been continued twice and further delays would not be granted.

September 10 (Judge Frank H. Roberts, Jr.): Johnson said that he had talked with some people "over in some building down on First Avenue" but he could not pay $700. He said that he could not get a "free" attorney and did not want to jeopardize his job by taking time to hire a lawyer of his own. The judge continued the matter to September 12,

and arranged another appointment for Johnson with the Office of Public Defense. He gave Johnson the following advice:

THE COURT: . . .

Now, if you don't get an attorney, which is your privilege, then you are going to go to trial without an attorney, and I think you realize that the seriousness of this charge is such that you sure need to be represented by counsel, but I want you to know that we are not going to play games, because I strongly suspect . . . that that's what is being done here, is that we're playing games.

This case is going to go to trial on the 29th of October . . . You are either going to have an attorney at public expense representing you or you are going to go out and get an attorney or you are going to suffer the consequences, but we are not going to have games played.

Do you understand?

THE DEFENDANT: (Nodding head.) Understand.

September 12 (Judge Frank H. Roberts, Jr.): The court examined Bruce Wilson of the Office of Public Defense as to Johnson's eligibility for appointed counsel. Mr. Wilson said that according to Johnson's financial statement, his take–home income was $253 per week, but that he had expenses of $960 per month. He also had $400 in savings. The staff at Mr. Wilson's office determined that Johnson was not eligible for appointed counsel and recommended that he contact Lawyer Referral Service. Johnson did so, and was told to call back later. He apparently never called back, as he remained without counsel. The court advised Johnson to return to Lawyer Referral Service immediately to secure counsel, and continued the hearing to September 15.

September 15 (Judge Frank D. Howard): Prior to the hearing, Johnson told the prosecutor that he intended to proceed pro se. The court set a CrR 3.5 hearing date of October 15, and then inquired as to Johnson's representation:

THE COURT: Mr. Johnson, again, it's your intention to proceed to trial without an attorney?

MR. JOHNSON: (Nodded head), okay.

THE COURT: Excuse me, is that your wish, you want to go to trial without being represented by an attorney; you do not intend to get one to represent you?

THE DEFENDANT: No.

THE COURT: All right. I have signed the order and made the notation on it that the defendant again stated he did not want an attorney.

October 15 (Judge H. Joseph Coleman): Prior to the CrR 3.5 hearing, the court again questioned Johnson about his representation. Judge Coleman first asked if the court had previously explained Johnson's right to be represented by counsel, to which Johnson answered "Yes." The court continued:

THE COURT: Now, you fully understand that you have the right to have an attorney to represent you at all stages of these proceedings, and if you do not have funds to hire a lawyer, the Court will appoint one for you at no expense to you. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Now, do you further understand the role of a lawyer in these proceedings? A lawyer would advise you with respect to legal defenses that you have. A lawyer would cross examine witnesses, would raise objections to evidence, other matters of that nature. Do you realize that by representing yourself, you are giving up the opportunity to have a trained and skilled person represent you in these proceedings? Do you understand that?

THE DEFENDANT: Yes.

Johnson then stated that he wanted an attorney, but could not take the time from his job to find one. Johnson requested that the hearing be continued. The court reviewed the events of prior hearings and concluded:

THE COURT: . . .

Then on September 15th, the defendant stated that he did not wish to be represented by counsel. It appears to the Court, Mr. Johnson, that substantial time has been permitted you for purposes of your obtaining counsel, and it doesn't appear to the Court that we can justifiably delay this matter any further.

What efforts have you made to obtain counsel over the period of this last two weeks?

THE DEFENDANT: I didn't make any . . .

The court then explained the nature of the CrR 3.5 hearing and proceeded with the hearing. Before adjourning, the court again advised Johnson:

> THE COURT: Now, if you wish to be represented by counsel at your trial, you must obtain counsel at that time. Otherwise, the Court on that date will have to proceed as we have proceeded this morning.

October 29 (Judge Eugene G. Cushing): When the case came on for trial, Johnson stated that he wanted an attorney. The court noted that on September 12 Johnson had signed an intention to appear pro se, and that if he wanted a lawyer, he had had plenty of time to find one. At 10:25 a.m. the court continued the trial until 1:30 that afternoon to allow Johnson to obtain counsel.

Johnson returned to the courtroom at 1:30 without an attorney. During the recess, Mr. Wilson spoke with the trial court. The court recounted that Johnson had listed monthly expenses of $200 for clothes and $450 for food, and that Mr. Wilson felt that these amounts were exorbitant. The court also noted that Johnson had $400 in savings, and asked what happened to that amount. Johnson replied that he had withdrawn his savings, and had borrowed an additional $1,000 (for purposes unstated). The court went on to question Johnson:

> THE COURT: Well, Mr. Wilson said you didn't qualify and he couldn't appoint counsel for you because you were financially able and had enough income to hire your own attorney.
> Did you try and hire an attorney for yourself today?
> MR. JOHNSON: Nope.
> THE COURT: Well—
> MR. JOHNSON: Because I ain't got no money.
> THE COURT: The record is very clear to me that you had ample opportunity to get counsel. You don't qualify under the rules and regulations of the King County Office of [Public Defense].

The court then reviewed events of the prior hearings in detail, and concluded as follows:

> THE COURT: . . .

. . . You should have an attorney. But you have had a long time to get an attorney. It appears to this court that you have no intention of trying to hire a lawyer. Have you ever gone out and tried to hire an attorney?

MR. JOHNSON: Yes.

THE COURT: When?

MR. JOHNSON: The first week after I got out of jail.

THE COURT: Who did you see?

MR. JOHNSON: I don't know the lawyer's name, but he wanted $700 and I didn't have no cash.

. . .

THE COURT: Have you been to any lawyers since that time, to try and hire another lawyer?

MR. JOHNSON: No.

The court then called a jury and the trial commenced.

Johnson claims that his constitutional right to counsel was abrogated. No one doubts that one accused of a crime is guaranteed the assistance of counsel by the constitution. U.S. Const. amend. 6. Furthermore, the State must furnish counsel at no cost to the indigent when he may lose his liberty if found guilty. *Argersinger v. Hamlin,* 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963); *Morgan v. Rhay,* 78 Wn.2d 116, 470 P.2d 180 (1970).

■ Johnson first argues that he was never properly advised of his right to counsel. It is accurate that at arraignment, and at some of the later court appearances, the right to counsel was not specifically enumerated. Nonetheless, the record clearly reflects Johnson's awareness of this right. Prior to arraignment, Johnson received a letter telling him to contact the Office of Public Defense for appointed counsel, and he went there almost immediately upon his release from custody.[1] Under no conceivable set of circumstances could that visit be interpreted as anything but a response to his having been informed of his right to

---

[1]We also note that approximately 2 months prior to this offense, Johnson went to the Office of Public Defense to obtain appointed counsel on a misdemeanor charge. His request was denied on the same basis as this incident.

counsel. Later, on October 15, Judge Coleman explained the right to counsel and the consequences of waiver thereof in great detail. Johnson acknowledged that he had been previously so informed. Johnson's own actions, described in the record before us, indicate beyond question that Johnson was well aware of his right to counsel, and we find no error.

The critical question in this appeal then becomes: Did Johnson knowingly and intelligently waive his right to counsel? After a careful examination of the record, we are satisfied that the answer is "yes". Although Johnson sporadically stated that he wished counsel, his conduct throughout these proceedings strongly indicates otherwise.

The record illustrates a continuing pattern of dilatory conduct by Johnson undertaken to slow the administration of justice and postpone his ultimate day of reckoning. Other courts have disapproved such efforts:

> It is a fundamental principle in our criminal justice system that a defendant has an absolute right to counsel. There is no concurrent right, however, that permits a defendant to delay a trial either deliberately or inadvertently because he has made little effort to engage an attorney.

*United States v. Merriweather,* 376 F. Supp. 944, 945 (E.D. Pa. 1974). A defendant may not "manipulate his right to counsel for the purpose of delaying and disrupting the trial." *United States v. Sperling,* 506 F.2d 1323, 1337 n.19 (2d Cir. 1974), *cert. denied,* 420 U.S. 962 (1975). *See also Relerford v. United States,* 309 F.2d 706 (9th Cir. 1962). The same principle has been applied in cases involving a defendant's choice of counsel, *United States v. Terry,* 449 F.2d 727 (5th Cir. 1971); *United States v. Merriweather, supra; People v. Guice,* 83 Ill. App. 3d 914, 404 N.E.2d 261 (1980), *cert. denied,* 450 U.S. 968 (1981); *see State v. Shelton,* 71 Wn.2d 838, 431 P.2d 201 (1967); *State v. Barton,* 28 Wn. App. 690, 626 P.2d 509 (1981), request for a continuance to obtain counsel, *United States v. Grow,* 394 F.2d 182 (4th Cir.), *cert. denied,* 393 U.S. 840 (1968); *Glenn v.*

*United States,* 303 F.2d 536 (5th Cir. 1962); *Spevak v. United States,* 158 F.2d 594 (4th Cir. 1946); *State v. Miles,* 77 Wn.2d 593, 464 P.2d 723 (1970), and right of self–representation, *Chapman v. United States,* 553 F.2d 886 (5th Cir. 1977); *United States v. Bennett,* 539 F.2d 45 (10th Cir.), *cert. denied,* 429 U.S. 925 (1976); *State v. Fritz,* 21 Wn. App. 354, 585 P.2d 173, 98 A.L.R.3d 1 (1978). *See also United States v. Abbamonte,* 348 F.2d 700 (2d Cir.), *cert. denied,* 382 U.S. 982 (1966). In the case presently before us, Johnson's almost complete inaction, which led to his failure to appear for trial represented by counsel, constituted a waiver of his right to counsel.

The court in *United States v. Arlen,* 252 F.2d 491 (2d Cir. 1958), had before it similar facts. Arlen's original counsel withdrew about 6 weeks before trial. Arlen, who was not indigent, waited 3 weeks before informing the trial judge that he had no attorney, although he wanted one. He was still without counsel when the case came on for trial. The trial judge denied his motion for a continuance, and Arlen represented himself at trial. On appeal, he claimed that he was deprived of his Sixth Amendment right to counsel. The Court of Appeals rejected his argument, stating that

> where a defendant able to retain counsel has been advised by the court that he must retain counsel by a certain reasonable time, and where there is no showing why he has not retained counsel within that time, the court may treat his failure to provide for his own defense as a waiver of his right to counsel and require such defendant to proceed to trial without an attorney. Such a waiver is similar in its consequences to an election made by an indigent defendant.

*Arlen,* at 494–95. A waiver was also found in *People v. Losacano,* 29 Ill. App. 3d 103, 329 N.E.2d 835 (1975). There, the nonindigent defendant failed to secure his own attorney after the court denied his motion for appointment of counsel. He represented himself at trial. The appellate court found that because the record showed that the defendant made no effort to obtain an attorney, he was deemed to have waived his right to counsel. *Losacano,* 329

N.E.2d at 838.

The record indicates that the trial court determined that Johnson was not indigent and had sufficient resources to hire his own lawyer. The court repeatedly advised him to do so. He was given instructions, through the Office of Public Defense, on how to obtain an attorney through Lawyer Referral Service, and was given considerable time to follow through with this advice. He never took advantage of this help, nor of the time given him. Assuming the truth of Johnson's own testimony, he contacted only one lawyer during the entire 11-week period between his arraignment and trial, and that was apparently just after the arraignment. He did nothing else, despite continual prodding by the court and the prosecutor. Johnson's behavior indicates a clear choice on his part not to be represented by counsel at trial, and he may not now disclaim the consequences of his choice. We agree with the court in *Spevak v. United States, supra* at 596, which said:

It seems clear that an accused who is able to employ counsel and fails to do so after being afforded opportunity, thereby waives the right and may not urge lack of counsel as excuse for delay.

Johnson also argues that the trial court did not adequately determine his eligibility for appointed counsel. To the contrary, the record shows that Johnson's financial situation was examined at several pretrial hearings.

In King County, the Office of Public Defense assists the superior court in determining eligibility. That office interviewed Johnson prior to the September 12 hearing. Based on his signed financial statement, which included employment, income, expenses, and resource information, the office decided that Johnson was not eligible for appointed counsel. The inquiry did not end there, however, and the court reviewed this determination on September 12. Judge Roberts examined Bruce Wilson of the Office of Public Defense and was satisfied that Johnson was financially able to hire an attorney, and advised him to visit Lawyer Referral Service immediately to obtain counsel.

Johnson again visited the Office of Public Defense on October 29, the first day of his trial. That office once more rejected Johnson's request for appointed counsel, and Bruce Wilson again spoke with the trial judge about the matter. When court reconvened that afternoon, Judge Cushing reviewed the facts which influenced Wilson's rejection of Johnson's indigency status, and came to no different conclusion than that reached by the Office of Public Defense. Under these circumstances, we cannot say that the question of Johnson's eligibility for appointed counsel was inadequately determined. Because the Office of Public Defense and the trial court properly determined that Johnson was financially able to obtain his own attorney, he had no right to appointed counsel. CrR 3.1(d)(1).

Finally, Johnson challenges local procedures which allow representatives of the Public Defender's Office to appear at arraignment on behalf of a defendant without counsel, and do not require them to reappear without formal discharge by the court. These procedures substantially comply with the rules. CrR 3.1(b); CrR 4.1(b). They assist the court in handling the large number of individuals brought before it for arraignment. The same methods provide defendants with information regarding the Office of Public Defense and its functions in determining eligibility for appointed counsel. We find no error or violation of the rules in the use of these necessary procedures.

The judgment is affirmed.

WILLIAMS, J., concurs.

RINGOLD, J. (dissenting)—A more detailed summary of the proceedings than that presented by the majority is necessary to put the facts into their proper perspective. At arraignment on August 15 a public defender, presumably appearing for all unrepresented defendants on the arraignment calendar that day, stood up with Johnson, waived the reading of the information, objected to the date of arraignment for purposes of the speedy trial rule, and entered a

pro forma plea of not guilty. The public defender signed the "Conditions of Release" form as "Attorney for Defendant." No subsequent appearance for Johnson was made by this attorney, nor did he ever withdraw from representation, as contemplated by CrR 3.1.[2] The court at arraignment did not inform Johnson of his right to counsel, contrary to CrR 4.1,[3] presumably because the public

---

[2]CrR 3.1 provides in pertinent part:

"RIGHT TO AND ASSIGNMENT OF COUNSEL

"**(a) Types of Proceedings.**

"(1) The right to counsel shall extend to all criminal proceedings for offenses punishable by loss of liberty regardless of their denomination as felonies, misdemeanors, or otherwise.

"**(b) Stage of Proceedings.**

"(1) The right to counsel shall accrue as soon as feasible after the defendant is taken into custody, when he appears before a committing magistrate, or when he is formally charged, whichever occurs earliest.

"(2) Counsel shall be provided at every stage of the proceedings, including sentencing, appeal, and post–conviction review. Counsel initially appointed shall continue to represent the defendant through all stages of the proceedings unless a new appointment is made by the court following withdrawal of original counsel pursuant to section (e) because geographical considerations or other factors make it necessary.

". . .

"**(d) Assignment of Counsel.**

"(1) Unless waived, counsel shall be provided to any person who is financially unable to obtain one without causing substantial hardship to himself or his family. Counsel shall not be denied to any person merely because his friends or relatives have resources adequate to retain counsel or because he has posted or is capable of posting bond.

"(2) The ability to pay part of the cost of counsel shall not preclude assignment. The assignment of counsel may be conditioned upon part payment pursuant to an established method of collection.

"**(e) Withdrawal of Attorneys.** Whenever a criminal cause has been set for trial, no attorney shall be allowed to withdraw from said cause, except upon written consent of the court, for good and sufficient reason shown."

[3]CrR 4.1 provides in pertinent part:

"ARRAIGNMENT

". . .

"**(b) Counsel.** If the defendant appears without counsel, the court shall inform him of his right to have counsel before being arraigned. The court shall inquire if he has counsel. If he is not represented and is unable to obtain counsel, counsel shall be assigned to him by the court, unless otherwise provided.

"**(c) Waiver of Counsel.** If the defendant chooses to proceed without counsel, the court shall ascertain whether this waiver is made voluntarily, competently

defender stood with Johnson. The matter was continued 2 weeks for omnibus hearing and to "confirm counsel."

At the omnibus hearing August 29, before a different judge and prosecuting attorney, Johnson stated that he had gone to the Office of Public Defense seeking appointed counsel but had been told he did not qualify. He told the court: "I'm going to seek an attorney at this time . . . I have my attorney . . . I don't know his name . . . But the person I talked to before." The court set the trial date and continued the omnibus hearing to allow Johnson to appear with counsel. The order setting trial date indicates "Defense Attorney" "not present."

On September 5, the omnibus hearing resumed before a third judge and deputy prosecutor. The majority states erroneously that "The prosecutor informed Johnson that it was of 'paramount importance' that he obtain counsel. Johnson said that he had not contacted an attorney because of the cost . . ." The record shows that the prosecutor's statement was made *to the court,* not to Johnson, and that Johnson did not say that "he had not contacted an attorney." Johnson's statement that he did "not have the money, $700, to give a man at one time" demonstrates to me that he in fact consulted an attorney, but concluded that he could not afford to pay. His statements at later hearings bear this out.

Contrary to the majority's statement that the court warned Johnson that further delays would not be granted, the record shows that it was the prosecutor who asked the court, "Wednesday will be the final date to come in with an attorney if he chooses to do that?" The court merely stated, in granting a continuance, that there would be a "serious

---

and with knowledge of the consequences. If the court finds the waiver valid, an appropriate finding shall be entered in the minutes. Unless the waiver is valid, the court shall not proceed with the arraignment until counsel is provided. Waiver of counsel at arraignment shall not preclude the defendant from claiming his right to counsel in subsequent proceedings in the cause, and the defendant shall be so informed. If such claim for counsel is not timely, the court shall appoint counsel but may deny or limit a continuance."

question" as to further continuances if Johnson failed to obtain counsel. The hearing was continued 5 days.

At the next hearing, on September 10, before yet another judge and prosecutor, Johnson still had not retained an attorney. The court sent Johnson back to the Office of Public Defense and continued the hearing 2 days so that a determination of Johnson's indigency status could be made.

On September 12 the same judge interviewed Bruce Wilson, the director of the Office of Public Defense, as to Johnson's eligibility for appointed counsel at State expense. Wilson testified that the original determination that Johnson did not qualify for appointed counsel on the current charge had been made by his office on the basis of an examination several months before, concerning an unconnected City of Seattle misdemeanor charge, so he had reinterviewed Johnson the previous Wednesday. At that time Johnson had indicated to him that he had $400 in the bank, income of $253 per week, and expenses of $960 per month. Wilson testified that he had told Johnson that "under the guide lines that had been established by the Court, it appeared that he was not eligible for an attorney at public expense." Wilson had directed Johnson to the Lawyer Referral Service, a private service maintained by the Seattle–King County Bar Association, and had suggested that he return to the Office of Public Defense if he encountered difficulty.

The fact that Johnson remained without counsel does not sustain the majority's finding that "He apparently never called back." In response to questions by the court, Johnson stated that he had gone to Lawyer Referral as directed, and "The lady told me to take my deal or call her back that evening or the next day to see how she came up with someone that would be able to help me with the case." The court continued the omnibus hearing until the following Monday so that Johnson could again consult with Lawyer Referral.

On September 15 Johnson appeared as scheduled before the judge who on September 5 had continued the case when Johnson refused to waive counsel, and the deputy prosecu-

tor who had appeared on August 29 at the first omnibus hearing. Neither the judge nor the deputy prosecutor had knowledge of what had transpired at the September 10 or 12 hearings. No questions were asked concerning the results at Lawyer Referral. The deputy prosecutor told the court that Johnson "indicates that he intends to proceed to trial himself," and requested that the court inquire regarding the pro se appearance. The prosecutor's statement is insufficient to indicate a knowing and intelligent waiver, but is consistent with Johnson's feeling that he could not afford counsel. Johnson's passive responses to the court's equivocal questions[4] cannot be read as a waiver of counsel. The court, however, made a notation in the record to the effect that Johnson had again stated that he intended to represent himself.

At the CrR 3.5 hearing on October 15, before yet another judge and deputy prosecutor, Johnson was finally expressly advised by the court of his right to counsel. He renewed his request for appointed counsel, saying he had gotten no answer from Lawyer Referral. The relevant colloquy is set

---

[4] "THE COURT: Mr. Johnson, you were here on September 5th and I continued this so that you could get an attorney if you wanted to, even though at that time you indicated you didn't want an attorney and just wanted a trial. Do you still want a trial date?

"MR. JOHNSON: That's right.

"THE COURT: The trial date is what?

"MR. KELLY: October 29th.

"THE COURT: All right. How long will the 3.5 hearing take?

"MR. KELLY: I think we should allow at least 45 minutes. There are about three witnesses and several statements involved.

"THE COURT: All right. [CrR 3.5 hearing set for October 15]

". . .

"THE COURT: Mr. Johnson, again, it's your intention to proceed to trial without an attorney?

"MR. JOHNSON: (Nodded head), okay.

"THE COURT: Excuse me, is that your wish, you want to go to trial without being represented by an attorney; you do not intend to get one to represent you?

"THE DEFENDANT: No.

"THE COURT: All right. I have signed the order and made the notation on it that the defendant again stated he did not want an attorney."

out in the margin.[5] The court first offered Johnson a continuance to obtain counsel but then noted that the file

---

[5] "THE COURT: What is your wish? Do you wish to have a lawyer or do you wish to represent yourself?

"THE DEFENDANT: I wish to have a lawyer, but I have been trying to get a lawyer, but, see, I lost a lot of time from my job at the time I have been running around trying to get a lawyer, so I had to try to keep my job because I have a lot of bills that I have to pay and I was getting behind in my bills and things. So, I had to keep myself at work every day, you know.

"THE COURT: You are employed at this time?

"THE DEFENDANT: Yes, I am.

"THE COURT: What is your income?

"THE DEFENDANT: I bring home about a thousand dollars a month.

"THE COURT: Were you ever interviewed by the Office of Public Defense to see if you were eligible for appointment of an attorney at public expense?

"THE DEFENDANT: Yes, I have.

"THE COURT: And did they find you not to be eligible?

"THE DEFENDANT: Yeah. They said I wasn't eligible and they gave me—they referred me to a lawyer referral, and I haven't got no answer from them. It has been about two weeks, and my job was in jeopardy. So, I had to try to stay on my job because I have bills and I have kids.

"THE COURT: You have a trial date of October 29th in this matter?

"MS. ROBINSON: That's correct, Your Honor.

"THE COURT: Has Mr. Johnson represented himself at all stages of these proceedings?

"MS. ROBINSON: To the best of my knowledge, he has, Your Honor. It was my understanding that he was going to determine whether or not he could get an attorney by the last time he was in court which I believe was the omnibus hearing on September 15.

". . .

"THE COURT: Well, Mr. Johnson, this isn't the trial, so the Court isn't going to be deciding guilt or innocence this morning. The sole purpose of this hearing is to decide whether any statements that you made may be admissible in evidence at the trial. Now, we can proceed if you wish this morning and hear this matter and decide it. You would still have the opportunity to obtain counsel for the trial itself.

"I can consider, if you wish, continuing the matter for 2 or 3 days for purposes of your obtaining an attorney for this hearing, but we would have to proceed as soon as we had another opening on the calendar. Now, your trial date is the 29th. That is two weeks from today. Do you want to proceed with this morning's hearing and dispose of this issue and continue to try to find counsel for the trial, or do you wish to have this hearing continued so that you can obtain counsel for this hearing?

"MR. JOHNSON: I would rather have this hearing continued.

"MS. ROBINSON: Your Honor, may I address the Court on this matter? I was not the one who was present at the omnibus, but it is my understanding that the omnibus hearing was also continued a couple of times in order for the defendant

reflected, incorrectly, that Johnson had stated previously that he did not want counsel. Without asking Johnson what had transpired at the earlier hearings, and with no regard for that part of CrR 4.1(c) which provides that the right to counsel can be claimed at any time even after a prior waiver, the court then withdrew the offer of a continuance. Although Johnson told the court that he had been to Lawyer Referral and had been waiting for an answer from them for the past 2 weeks, the court proceeded to hold the CrR 3.5 hearing without Johnson being represented by counsel.

---

to get an attorney, and in order to have the Office of Public Defender interview him.

"The final note on September 10, 1980, it was to be determined finally whether or not the defendant intended to get an attorney, and at that point he said he was going to go pro se.

"THE COURT: Let me review the file, because there is an indication of what you are stating in the file.

"Yes. What Ms. Robinson has indicated to the court is true. On September 5, 1980, the defendant was advised that he would be given this continuance to attempt to obtain an attorney. A trial date was set at that time.

"Then on September 15th, the defendant stated that he did not wish to be represented by counsel. It appears to the Court, Mr. Johnson, that substantial time has been permitted you for purposes of your obtaining counsel, and it doesn't appear to the Court that we can justifiably delay this matter any further.

"What efforts have you made to obtain counsel over the period of this last two weeks?

"THE DEFENDANT: I didn't make any because, like I say, my job is in jeopardy when I run around trying to get me a lawyer, and I lost a lot of time, you know, and they are about to put me out of a job. Like I say, I have a lot of responsibilities and bills, so I have to stay on the job, you know, and kind of catch up with my bills and things.

"THE COURT: Again, Judge Howard has initialed an indication in the file on September 15th that you indicated at that time you wished to proceed without an attorney, and this hearing was set. The State is present. The State has witnesses present, and in light of the time that has been allowed in the past, I don't think the Court can justifiably continue this matter. You may still obtain an attorney for purposes of the trial and that attorney can review everything that has transpired in the event that there should be any request for a reconsideration or anything of that nature. We will proceed this morning with this matter. You may have a seat at counsel table and we will proceed. [Testimony heard and Johnson's statements ruled admissible.]

"THE COURT: Now, if you wish to be represented by counsel at your trial, you must obtain counsel at that time. Otherwise, the Court on that date will have to proceed as we have proceeded this morning."

Johnson asked no questions and did not testify. The court ruled Johnson's statements admissible and told Johnson that if he wanted counsel for trial, he would have to obtain counsel "at that time."

Trial was held 2 weeks later, on October 29, before yet another judge, the sixth since arraignment, with the same deputy prosecutor as at the CrR 3.5 hearing. Johnson again appeared without counsel. The deputy prosecutor mistakenly informed the court (1) that Johnson had not appeared with counsel at any of his prior court appearances, and (2) that the judge at the CrR 3.5 hearing had "indicated that it was his belief that Mr. Johnson was just trying to work the system in that he constantly appeared without counsel, yet the statement indicated that he wanted an attorney." She also told the court that Johnson had once more indicated to her that morning that he wanted an attorney but could not afford one. The following colloquy ensued:

THE COURT: All right, I'll hear you, Mr. Johnson. Do you intend to get an attorney or not?

MR. JOHNSON: I have been working on trying to get an attorney, you know, and—

THE COURT: You have been trying to get an attorney?

MR. JOHNSON: I have been trying to get an attorney from the beginning, but see it got to the point where I was losing a lot of time from my job. I got two letters from the Teamsters, and the company warned me.

. . .

THE COURT: But August the 15th, and you have had all of this time to get an attorney. Now, why didn't you hire an attorney?

MR. JOHNSON: I don't have no cash money, man.

THE COURT: According to the public defender as represented by the deputy prosecutor, you were making a thousand dollars a month, so you had funds to hire an attorney. They said you had too much money and couldn't defend you.

MR. JOHNSON: I put food on my table for my kids, I have a loan that I'm paying off, man. I'm trying to get an attorney, man. That's all I can do is try.

THE COURT: How long will it take to try this case, two

days?

Ms. Robinson: It depends on whether or not there is a jury. The State has five witnesses none of whom will be long.

The Court: I have to be through this trial by Friday.

Ms. Robinson: That's what the bailiff has just informed me.

The Court: Because I'm leaving Saturday morning.

Ms. Robinson: Your Honor, I would anticipate that I could probably put all of my witnesses on in half a day.

The Court: Well, that's what I thought, so he certainly wouldn't take much more than a day and a half—I don't know—well, let's put it this way; it's now 10:25. There's already a paper, we call it a Pleading that is in this case. This was filed on September 12th, 1980, and it says you are appearing Pro Se, you're appearing for yourself which you have a right to do, and you signed this, Jimmy C. Johnson, that you were appearing for yourself, that you didn't want an attorney, didn't need an attorney.

Mr. Johnson: I do want an attorney.

The Court: Well, you have had ample time to get an attorney, let's put it this way: I'll give him until 1:30 to come back here with an attorney. If he doesn't come back here by 1:30 with an attorney, we'll proceed without.

You have between now, 10:25, and 1:30 this afternoon to be in court here at 1:30.

Mr. Johnson: I don't think I can come up with one by that time.

The Court: Well, I don't know why you can't. It's up to you to do it. You either get an attorney between now and 1:30 or—. You have delayed this thing long enough. You either have an attorney here by 1:30 or we'll proceed to trial and you can represent yourself. You have already agreed to do that once—to represent yourself, now you've changed your mind, and you can't keep doing this just for the purpose of delaying this trial.

You have had ample opportunity to get a lawyer. You can go down to the public defender's office between now and 1:30 and see if they'll defend you and if they won't, you can hire your own.

If you have funds, the State will not provide one for you.

Mr. Johnson: I'll go see what I can come up with.

[1:30 p.m.]

THE COURT: Did you get an attorney?

MR. JOHNSON: No.

THE COURT: Tell me what you did to try and get an attorney.

MR. JOHNSON: I went to the public defender's office.

THE COURT: Well, then what happened?

MR. JOHNSON: They said I just can't get no counsel.

THE COURT: Well, Mr. Wilson who is the head and chief of the public defender—the Office of Public Defense came to see me, and apparently after you were there. He said that you had been there in September, and you asked to have counsel, and at that time they filled out a form. And then later on, he was requested by Judge Roberts when you were before Judge Roberts, to find out why they hadn't furnished you with counsel.

Were you aware of any of this background?

MS. ROBINSON: No, I don't believe so.

THE COURT: Well, all right, it will be in the record. So at that time Mr. Wilson explained to Judge Roberts that you didn't qualify for the reason that you were financially able to hire your own attorney.

At that time you made out and gave the information to the Office of Public Defense, that you worked at the Bloch Steel, that you were a steel burner. You made $8.58 an hour, you had take home pay of $253 a week. You belong to Local 117 of the Teamsters Union.

You have listed in your expenses, rent $230, all bills paid, and then you had down here clothes, $200 a month. Then you had food, $450 a month for one person.

So Mr. Wilson was of the opinion that $200 a month for clothes for you was exorbitant and so was $450 a month for food for one person.

Also, you reported to Mr. Wilson that you had at that time $300 in the credit union, and that you had $100 in the Sea–First saving. How much do you have in the credit union today or when you last checked?

MR. JOHNSON: Not any.

THE COURT: What happened to the $300?

MR. JOHNSON: It [sic] got it out and sent it to my peoples. As a matter of fact I borrowed a thousand dollars on top of that.

THE COURT: And the Sea–First savings; do you still have a savings account with Sea–First Bank?

MR. JOHNSON: I still have an account there.

THE COURT: How much do you have in there now?

MR. JOHNSON: About five or ten dollars.

THE COURT: Well, Mr. Wilson said you didn't qualify and he couldn't appoint counsel for you because you were financially able and had enough income to hire your own attorney.

Did you try and hire an attorney for yourself today?

MR. JOHNSON: Nope.

THE COURT: Well—

MR. JOHNSON: Because I ain't got no money.

THE COURT: The record is very clear to me that you had ample opportunity to get counsel. You don't qualify under the rules and regulations of the King County Office of the Public Defender. Mr. Wilson has already given information to Judge Roberts previously on the—apparently on October 15th of this year; you made a Notice of Appearance Pro Se, that's for yourself. [The court reviews the file.]

So you have had since the middle of August to get an attorney to represent you. Mr. Wilson of the public defender's office told me that you had been over there three different times and they told you each time you didn't comply with the regulations, that you had enough financial responsibility to hire your own attorney.

They advised you as such and said they could not represent you because you had enough funds to hire your own lawyer.

So all I can do is have the jury come down here and we'll impanel a jury and you can act as your own lawyer.

MS. ROBINSON: Your Honor, I would like to caution the defendant that the maximum sentence that can be imposed in this matter is life and/or a $10,000 fine.

THE COURT: He hasn't been convicted yet. He's presumed to be innocent until proved guilty beyond a reasonable doubt.

All this court can do is state that in a serious charge like this, it would be to your interest and advantage to have an attorney represent your interest.

This court will see that your constitutional and statutory rights are observed and I will see that the State must prove you guilty beyond a reasonable doubt, otherwise you will be acquitted. That's all I can tell you. You should have an attorney. But you have had a long time to

get an attorney. It appears to this court that you have no intention of trying to hire a lawyer. Have you ever gone out and tried to hire an attorney?

MR. JOHNSON: Yes.

THE COURT: When?

MR. JOHNSON: The first week after I got out of jail.

THE COURT: Who did you see?

MR. JOHNSON: I don't know the lawyer's name, but he wanted $700 and I didn't have no cash.

THE COURT: Well, you had enough money to pay him something didn't you at that time?

MR. JOHNSON: Yeah.

THE COURT: Well, why didn't you hire him then?

MR. JOHNSON: Because he wanted the full amount.

THE COURT: Have you been to any lawyers since that time, to try and hire another lawyer?

MR. JOHNSON: No.

THE COURT: Well, you can sit at the counsel table and go up and bring twelve jurors down.

Johnson did not take part in his trial other than to ask one or two questions at voir dire. He did not testify or call any witnesses in his defense. As could be expected, the jury found him guilty.

## IMPLIED WAIVER

Though the appellate process precludes our court from making factual determinations, the majority weighs credibility, discerns bad faith on the part of the defendant and usurps the role of the trial court by determining that Johnson waived his right to counsel. The majority makes a factual finding that "Johnson's behavior indicates a clear choice on his part not to be represented by counsel at trial," and then infers a knowing, intelligent, and voluntary waiver of the right to counsel from Johnson's "continuing pattern of dilatory conduct . . . undertaken to slow the administration of justice and postpone his ultimate day of reckoning." Neither the finding nor the inference is supported by the record, which shows Johnson continually asserting his right to counsel and asking the court on every occasion to appoint counsel.

The majority reads the record as showing, by Johnson's

own testimony, that "he contacted only one lawyer during the entire 11-week period between his arraignment and trial". The record affirmatively shows, however, that in addition to speaking to this attorney, who apparently wanted $700 payment in advance, Johnson contacted the Office of Public Defense three times at the direction of the court, and the Lawyer Referral Service at least twice, and he also "talked to several attorneys . . . People down in— over in some building down on First Avenue." Likewise, the majority's statement that "He never took advantage of this help, nor of the time given him" is wrong. Johnson followed the court's instructions each time, returning to the Office of Public Defense when told to do so by three different judges. He consulted Lawyer Referral and was waiting to hear from them on the date of his trial.

No consideration is given by the majority to the importance of a full determination of the defendant's basic understanding of what transpired in the complicated legal procedures leading to his trial, the referrals from one agency to another, the changes in judges and deputy prosecuting attorneys and the manifest confusion and dismay any person charged and awaiting trial on a felony offense must face. There may even have been prodding by busy trial judges as well. His behavior does not indicate to me "a clear choice on his part not to be represented by counsel at trial," as it apparently does to the majority.

Nowhere in the record is there a finding that Johnson waived counsel, as required by CrR 4.1(c). The judges sitting at Johnson's various court appearances either continued the proceedings sua sponte so that Johnson could retain counsel, or relied on the misleading record of what had transpired earlier. At trial, for instance, the court relied on the nonindigency finding of the Office of Public Defense, which had been made more than a month before, even though Johnson asserted that his financial circumstances had changed in the interim. The trial judge also partly based his action on the notices of appearance pro se, which the majority herein characterizes as "an intention to appear

pro se." Those documents, however, state nothing concerning intention, but merely assert the fact that on such–and–such a date, the defendant appeared without an attorney.

In effect, the majority rules that a defendant's failure to retain private counsel for financial reasons amounts to a waiver of the right to counsel. Such a result is ironic because if Johnson had evinced an *express intent* to proceed pro se, the trial court would have been under the most stringent obligation to ascertain, by the defendant's own testimony, whether the request was made knowingly and intelligently. *See, e.g., Faretta v. California,* 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975); *State v. Chavis,* 31 Wn. App. 784, 644 P.2d 1202 (1982).

In implying a waiver in this case, the majority opinion confuses the right to counsel with the right to counsel *of one's choice,* the right to *self–representation,* and the right to a *continuance* in order to retain private counsel rather than appointed counsel. While the latter "rights," as the majority points out in its string citation, rest to some extent within the trial court's discretion and may be limited or waived if used for delay, the right to counsel *per se,* absent a knowing and intelligent waiver on the record, is fundamental and absolute. *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963); *Carnley v. Cochran,* 369 U.S. 506, 8 L. Ed. 2d 70, 82 S. Ct. 884 (1962). In only two of the cases cited by the majority did a court infer a waiver of the right to counsel itself. *People v. Guice,* 83 Ill. App. 3d 914, 404 N.E.2d 261 (1980), *cert. denied,* 450 U.S. 968 (1981); *People v. Losacano,* 29 Ill. App. 3d 103, 329 N.E.2d 835 (1975). In the other cases, the defendants either: (1) were initially represented by counsel and asked for a continuance to change counsel; or (2) were offered but expressly waived appointed counsel.

In *Guice,* appointed counsel was not available since conviction of the offense charged could not result in imprisonment. The defendant obtained 10 continuances to obtain counsel. On six other occasions, the defendant failed to appear as scheduled, and arrest warrants issued. Some 14

months after the first continuance was granted, the trial court refused to grant any more continuances, and Guice went to trial without counsel. The appellate court affirmed, finding that Guice waived her right to counsel, and stated, "It is with extreme caution that we take the unusual action of holding that the defendant waived counsel by her conduct." 83 Ill. App. 3d at 918. The *Guice* court distinguished *People v. Eickelman,* 32 Ill. App. 3d 665, 336 N.E.2d 61 (1975), in which a finding of implied waiver had been reversed, on the basis that in *Eickelman* the proceedings had only been delayed 2 months.

In *Losacano* the defendant never contacted a private attorney, instead asserting a right to appointed counsel at public expense despite his substantial income.

In the case at bench, in contrast, less than 11 weeks elapsed between Johnson's arraignment and trial. He was never advised of the possible sentence for first degree burglary until the date of trial. He constantly asserted his right to counsel, imploring the court to "get me a lawyer." None of the six judges before whom Johnson appeared ever made a finding of a waiver on the record, as required by CrR 4.1(c).

> Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.

*Carnley v. Cochran, supra* at 516. This record does not support a finding of waiver, because Johnson simply did not waive his right to counsel.

### REMEDY

Having concluded that the defendant did not waive his right to counsel, either expressly or by implication, the next question presented is the appropriate remedy. CrR 3.1-(d)(2) provides:

> The ability to pay part of the cost of counsel shall not preclude assignment. The assignment of counsel may be conditioned upon part payment pursuant to an estab-

lished method of collection.

King County Code 2.60.060, setting out the eligibility for services of the Office of Public Defense, states in part:

> If a person has some resources available which can be used to secure representation but not sufficient resources to pay the entire costs of private legal services without substantial hardship to himself and his family, the administrator shall determine how much the person shall pay for the legal services provided through the office of public defense.

Under both the rule and the ordinance, an accused has the right to appointed counsel even if not quite indigent. The court, together with the Office of Public Defense, has the power and duty to condition appointment of counsel on part payment by the accused, commensurate with his ability to pay.

The crucial constitutional requirement is not to ensure that an accused actually qualifies for appointed counsel because of indigence, but to make sure that "absent a knowing and intelligent waiver, no person [is] imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Argersinger v. Hamlin,* 407 U.S. 25, 37, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972). The trial court's obligation is to appoint counsel first, and to worry about payment later. This court should accordingly reverse Johnson's conviction and remand for further proceedings following appointment of counsel for the defendant.

I therefore dissent.

Reconsideration denied October 20, 1982.

Review denied by Supreme Court February 24, 1983.