[No. 43037.    En Banc.    July 25, 1974.]

*In the Matter of the Welfare of* ALEXANDER H. LUSCIER *et al., Minors.*

*J. K. Hallam,* for petitioner.

*L. Edward Brown, Prosecuting Attorney,* by *Dennis R. Colwell, Deputy,* for respondent.

*Norman Rosenberg, Daniel C. Wershow, David A. Leen,* and *Mary E. Howell,* amici curiae.

FINLEY, J.—The Court of Appeals, Division Two, pursuant to RCW 2.06.030, has certified an issue of "whether the right of a parent to his children is sufficiently fundamental to entitle an indigent parent to appointment of counsel at public expense in a permanent child deprivation proceeding as a matter of constitutional law."

On April 4, 1973, a petition was filed in the Superior Court for Grays Harbor County alleging the dependency, per RCW 13.04.010, of the children of petitioner Luscier, and that he should be permanently deprived of all parental rights and interests. Subsequent to a June hearing on the petition, the Superior Court, on August 10, 1973, entered an order of permanent deprivation. On September 14, 1973,

the Superior Court determined that petitioner was indigent but denied a motion for appointment of counsel for the purpose of seeking appellate review of the deprivation order. As its reason for denial of the motion for appointment of counsel, the Superior Court stated that it was without authority to order the expenditure of public funds for this purpose. Petitioner then filed his motion for appointment of counsel with the Court of Appeals, Division Two, which, as noted, has certified that question to this court.

■ The family entity is the core element upon which modern civilization is founded. Traditionally, the integrity of the family unit has been zealously guarded by the courts. *See, e.g., Ginsberg v. New York*, 390 U.S. 629, 639, 20 L. Ed. 2d 195, 88 S. Ct. 1274 (1968); *May v. Anderson*, 345 U.S. 528, 533, 97 L. Ed. 1221, 73 S. Ct. 840 (1953). The safeguarding of familial bonds is an innate concomitant of the protected status accorded the family as a societal institution. The fundamental nature of parental rights as a "liberty" protected by the due process clause of the Fourteenth Amendment was given expression in *Meyer v. Nebraska*, 262 U.S. 390, 399, 67 L. Ed. 1042, 43 S. Ct. 625, 29 A.L.R. 1446 (1923), wherein the court stated:

> While this Court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.

The essential right to procreate and raise children was acknowledged in *Skinner v. Oklahoma*, 316 U.S. 535, 541, 86 L. Ed. 2d 1655, 62 S. Ct. 1110 (1942), to be among "the basic civil rights of man." "It is cardinal with us that the custody, care and nurture of the child reside first in the

parents . . ." *Prince v. Massachusetts,* 321 U.S. 158, 166, 88 L. Ed. 645, 64 S. Ct. 438 (1944). And, in *Stanley v. Illinois,* 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972), the court recognized the fundamental right of a father to custody of his children.

The courts of Washington have been no less zealous in their protection of familial relationships. Long ago, this court in *In re Hudson,* 13 Wn.2d 673, 678, 685, 126 P.2d 765 (1942), stated that a parent's interest in the custody and control of minor children was a "sacred" right and recognized at common law. The Court of Appeals has characterized the right of a parent to their child as "more precious to many people than the right of life itself." *In re Gibson,* 4 Wn. App. 372, 379, 483 P.2d 131 (1971). Child deprivation hearings, in particular, have been the subject of close scrutiny and this court, on many occasions, has carefully scrutinized deprivation hearings to assure that the interested parties have been accorded the procedural fairness required by due process of law. *See, e.g., In re Sego,* 82 Wn.2d 736, 513 P.2d 831 (1973); *In re Lybbert,* 75 Wn.2d 671, 453 P.2d 650 (1969); *In re Ross,* 45 Wn.2d 654, 277 P.2d 335 (1954); *In re Petrie,* 40 Wn.2d 809, 246 P.2d 465 (1952); *In re Martin,* 3 Wn. App. 405, 476 P.2d 134 (1970). There can be no doubt that the full panoply of due process safeguards applies to deprivation hearings.

It is in this light we examine petitioner's plea for appointment of counsel. In a deprivation hearing, a parent without the assistance of counsel does not confront pro se a similarly situated party litigant, but the highly skilled representatives of the State. Not surprisingly, it has been statistically established, in one jurisdiction, that the presence of legal counsel in child deprivation hearings results in a significantly lower percentage of court findings against the parents. Note, 4 Colum. J. Law & Soc. Prob. 230, 241-43 (1968). The cruel inequity of this situation was the subject of a Columbia Law Review note which concluded:

> Since there is no evidence indicating that the average respondent who can retain counsel is better or less neglect-

ful than one who cannot, the conclusion seems inescapable that a significant number of cases against unrepresented parents result in findings of neglect solely because of the absence of counsel. In other words, assuming a basic faith in the adversary system as a method of bringing the truth to light, a significant number of neglect findings (followed in many cases by a taking of the child from his parents) against unrepresented indigents are probably erroneous. It would be hard to think of a system of law which works more to the oppression of the poor than the denial of appointed counsel to indigents in neglect proceedings.

Note, *Child Neglect: Due Process for the Parent*, 70 Colum. L. Rev. 465, 476 (1970). Thus, it is readily apparent that the lack of counsel, in itself, may lead improperly and unnecessarily to deprivation of one's children. The absence of counsel in the perhaps sophisticated realm of appellate practice will only compound the probabilities that the rights of the parents are not effectually presented and protected by the law and the courts.

In our opinion, the parent's right to counsel in this matter is mandated by the constitutional guaranties of due process under the fourteenth amendment to the United States Constitution and article 1, section 3 of the Washington Constitution. Respondent seeks to distinguish this action from the decision of the United States Supreme Court in *Argersinger v. Hamlin,* 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972), by characterizing a deprivation proceeding as "civil." In that case the court recognized the defendant's right to counsel where imprisonment was a possibility. The distinction to be made in *Argersinger* is not whether a proceeding is "civil" or "criminal," but whether the individual will be deprived of *liberty.* As a result of a child deprivation proceeding, a child may be deprived of the comfort and association of its parents and be committed to the care of an institution. Surely, the reasoning of *Argersinger,* which requires the appointment of counsel if there is the possibility of even a 1-day jail sentence, must also extend to a proceeding where a parent may be deprived of

a child forever. The *Argersinger* decision is, of course, grounded upon the Sixth Amendment which cannot be extended to the *parents* in a child deprivation hearing. *Cf.* note 1, *infra.*

It cannot be gainsaid, however, that the right to one's children is a "liberty" protected by the due process requirements of the Fourteenth Amendment and Const. art 1, § 3. *See Meyer v. Nebraska, supra.* We, therefore, join the Supreme Courts of Maine, Nebraska, New York, Oregon, and Pennsylvania in holding that appointment of counsel is constitutionally required in permanent deprivation proceedings.[1] *See Danforth v. State Dep't of Health & Welfare,* 303 A.2d 794 (Me. Sup. Jud. Ct. 1973); *In re Friesz,* 190 Neb. 347, 208 N.W.2d 259 (1973); *In re B.,* 30 N.Y.2d 352, 285 N.E.2d 288 (1972); *State v. Jamison,* 251 Ore. 114, 444 P.2d 15 (1968); In re R.I., _____ Pa. _____ , 312 A.2d 601 (1973). *Accord, Cleaver v. Wilcox,* 40 U.S.L.W. 2658 (N.D. Cal. Mar. 22, 1971).

The cause certified to this court is remanded to the Court of Appeals for disposition in accordance with this decision. It is so ordered.

HALE, C.J., and ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

---

[1] No issue is raised in the instant case regarding the representation of the children in this matter. While this court has always treated the rights of a parent to its child as fundamental, the welfare of the child is to be given paramount consideration. *In re Sego,* 82 Wn.2d 736, 513 P.2d 831 (1973); *In re Lybbert,* 75 Wn.2d 671, 453 P.2d 650 (1969). We assume that, in instances where the interests of the parents and the children diverge, the court will appoint a guardian ad litem to assure adequate protection of the child. *See In re Quesnell,* 83 Wn.2d 224, 517 P.2d 568 (1973); *In re Lewis,* 51 Wn.2d 193, 316 P.2d 907 (1957).