65 P.3d 1219 (2003)
In re the WELFARE OF G.E., T.E., and N.E., Minor Children.
Nos. 27839-1-II, 27842-1-II, 27849-9-II.
Court of Appeals of Washington, Division 2.
April 1, 2003.
*1221 Natalee Ruth Fillinger, Olympia, WA, for Respondent.
Peter B. Tiller, Attorney at Law, Centralia, WA, for Appellant.
*1220 QUINN-BRINTNALL, J.
K.L. and C.E. appeal the orders that terminated their parental rights as to their children, T.E., N.E., and G.E. A commissioner of this court reviewed this matter under RAP 18.13 and a panel of judges decided subsequent motions to modify. The commissioner resolved all issues except one: Does the record establish that C.E. waived his right to be represented by counsel during the termination proceedings? It does not, and so we reverse.

FACTS
K.L. and C.E. are the mother and father of T.E., born January 24, 1999; N.E., born February 26, 1997; and G.E., born January 22, 1996. In March 1997, the Department of Social and Health Services (DSHS) filed dependency petitions claiming that G.E. and N.E were dependent children. The superior court appointed Kendra Sprague[1] to represent C.E. K.L. and C.E. entered into agreed orders of dependency. The court found the children dependent in May 1997 and ordered the parents to complete drug and alcohol evaluations and to follow all recommendations. The court allowed G.E. and N.E. to remain in their parents' custody.
Over the period of G.E.'s and N.E.'s dependency, K.L. and C.E. minimally complied with the court-ordered services. By November 1998, DSHS's social worker and the children's guardian ad litem recommended dismissing the dependencies. The record does not show why, but Amanda Vey had replaced Sprague as C.E.'s counsel by the end of the dependencies. In December 1998, the court dismissed the dependency orders as to G.E. and N.E.
T.E. was born the next month. Two months later, DSHS filed new dependency petitions regarding G.E. and N.E. and a dependency petition regarding T.E. The petitions claimed that K.L. had used methamphetamine during her pregnancy with T.E. and had not sought prenatal care.
Vey again represented C.E. as his appointed counsel. K.L. and C.E. did not contest the petitions. On July 19, 1999, the superior court found G.E., N.E., and T.E. to be dependent children. The court ordered C.E. and K.L to undergo assessments and to participate in services. The court allowed N.E. and G.E. to remain in their parents' custody, subject to their compliance with the juvenile court's orders and to their having negative *1222 urinalysis (UA) results. The court placed T.E. in foster care.
C.E.'s and K.L.'s custody of N.E. and G.E. lasted for approximately two months after the dependency hearing. Then, in September 1999, the court ordered DSHS to remove N.E. and G.E. from their parents' custody and place them in foster care because C.E. and K.L. had failed to comply with ordered services and to provide UA samples.
By the March 2000 review hearing, Stephen Geringer had replaced Vey as C.E.'s appointed counsel. The record does not show why, though some of DSHS's Individual Service and Safety Plans suggest that C.E. had fired Vey.
On June 29, 2000, a court commissioner granted Geringer's motion to withdraw immediately as C.E.'s appointed counsel. The Order on Withdrawal did not state the reasons for Geringer's withdrawal. The Order on Withdrawal stated, "A new attorney will not be appointed by the court." Exhibit 175. C.E. did not retain an attorney. C.E. represented himself during the remaining review hearings in September 2000, December 2000, and March 2001.
DSHS filed termination petitions in November 2000 and the court scheduled a termination hearing for March 15, 2001. On that date, K.L. and C.E. asked for the first time that the court appoint counsel to represent them in the termination proceeding. DSHS did not object to K.L.'s request, but it did object to C.E.'s request because the court commissioner had ordered that the court would not appoint new counsel for C.E. The termination court responded, "We treat [the dependency and termination proceedings] as separate proceedings and that's why I made inquiry as to whether there was specifically an [attorney appointment] issue addressed in the termination cases themselves." Report of Proceedings (RP) (3/15/01) at 5. The court appointed Jodi Backland to represent C.E. and continued the termination hearing to May 31, 2001.
At the start of the May 31, 2001 hearing, Backlund moved to withdraw as C.E.'s counsel under RPC 1.15. The court asked C.E. whether he objected to Backlund's withdrawal as his counsel but did not inform him that if Backlund withdrew he would be required to represent himself.
THE COURT: Then, [C.E.], my inquiry to you right now is are you joining in the request that new counsel represent you?
[C.E.] Yes, I am.
RP (5/31/01) at 10.
The court conferred with Backlund off the record about her motion. Backlund only disclosed that the conflict regarded a future event. The court found that C.E. had made Backlund's representation of him unreasonably difficult and granted Backlund's motion. The court then directed C.E. to proceed pro se:
[A]s I understand the history of these cases, there's been periods through the dependency and even in the termination case where [C.E.] has previously refused to request court appointed counsel up until the beginning of the trial back on March 15th. And during the dependency has had other counsel represent him and at least one of those counsel withdraw because of a conflict or potential conflict under the rules of professional conduct. So given that situation, and the finding of the Court on potentialor the rule for the potential violation regarding Ms. Backlund, [C.E.], I'm not going to appoint new counsel. I should also make note that the Court Commissioner has previously ruled that no new counsel would be appointed in the dependency proceedings. So I'm not going to appoint new counsel, you can represent yourself on the matter.
RP (5/31/01) at 12-13.
C.E. protested that he did not understand the nature of the proceedings and needed legal representation. The court again refused to appoint counsel because C.E. had declined opportunities during the dependency hearings to request counsel and because C.E. had already delayed the termination proceeding by seeking representation on the day of the previously scheduled hearing. The court did not continue the termination hearing.
At the conclusion of the termination hearing, the court found that DSHS had proven *1223 by clear, cogent, and convincing evidence all of the elements required by former RCW 13.34.180(1) (2000). The court further found that terminating K.L.'s and C.E.'s parental rights would be in the best interests of G.E., N.E., and T.E. We affirmed the termination of K.L.'s parental rights on May 21, 2002.

ANALYSIS
C.E. argues that the court erred when it refused to appoint him new counsel and when it required him to represent himself at the termination hearing. Parents have a statutory right to counsel in child dependency proceedings, including parental rights termination proceedings. RCW 13.34.090(2); In re Dependency of Grove, 127 Wash.2d 221, 232, 897 P.2d 1252 (1995).[2]
C.E.'s statutory right to counsel is set forth in RCW 13.34.090(2):
At all stages of a proceeding in which a child is alleged to be dependent, the child's parent, guardian, or legal custodian has the right to be represented by counsel, and if indigent, to have counsel appointed for him or her by the court. Unless waived in court, counsel shall be provided to the child's parent, guardian, or legal custodian, if such person (a) has appeared in the proceeding or requested the court to appoint counsel and (b) is financially unable to obtain counsel because of indigency.
Having determined that C.E. has a statutory right to representation in the termination proceeding, we turn now to whether he waived it. We first address the standard for determining waiver of the statutory right to counsel; we then address whether the record before us is sufficient to support waiver.
STANDARD OF REVIEW OF WAIVER OF STATUTORY RIGHT TO COUNSEL
This state's courts have yet to clearly state whether parents must make a knowing and intelligent waiver of their right to counsel equal to the standards found in criminal law cases. In re Welfare of Kevin L., 45 Wash.App. 489, 495, 726 P.2d 479 (1986) (McInturff, J., specially concurring).[3] RCW *1224 13.34.090(2) expressly requires appointment of counsel "unless waived in court." Thus, unlike federal constitutional law,[4] Washington presumes that indigent parents in dependency and termination cases "shall be provided" counsel at public expense.
Moreover, it requires that counsel shall be provided to an indigent parent whenever "the child's parent, guardian, or legal custodian,... (a) has appeared in the proceeding or requested the court to appoint counsel [.]" RCW 13.34.090(2) (emphasis added). The parents' appearance triggers the court's duty to provide counsel; no request for appointment of counsel is required.
Because RCW 13.34.090 mandates appointment of counsel when the child's indigent parent has appeared, we hold that a waiver of the right to counsel in dependency and termination proceedings must be expressed on the record and knowingly and voluntarily made. Because the statute presumes the appointment of counsel, this standard is similar to the waiver of counsel applicable in criminal proceedings. The due process right to counsel in criminal pre-adjudicatory proceedings differs slightly from the Sixth Amendment right to counsel. But because the statutory right to counsel at issue here requires appointment of counsel absent a waiver in court, the evidence of waiver required to be on the record is similar. When an indigent parent appears for a dependency or termination proceeding, a waiver of his statutory right to counsel at public expense must appear on the court record.
WAIVER TO RIGHT TO COUNSEL
This court has identified three ways a criminal defendant may waive his or her right to counsel. A defendant may (1) voluntarily relinquish the right, (2) waive it by conduct, or (3) forfeit it through "extremely dilatory conduct." City of Tacoma v. Bishop, 82 Wash.App. 850, 859, 920 P.2d 214 (1996) (citing United States v. Goldberg, 67 F.3d 1092, 1099-1102 (3rd Cir.1995)). These guide our review of a parent's waiver of the statutory right to counsel under RCW 13.34.090.
Relinquishment is "usually indicated by an affirmative, verbal request." Bishop, 82 Wash.App. at 858, 920 P.2d 214. For the request to be valid, the court must ensure that the defendant "is aware of the risks of self-representation[.]" Bishop, 82 Wash. App. at 858, 920 P.2d 214. Here, C.E. adamantly sought substitute counsel, and the court did not advise him of the risks of self-representation. Thus, he did not waive his right to counsel by relinquishment.
If a defendant engages in dilatory tactics or hinders a proceeding, a court may find that the defendant waived his right to counsel by conduct. Bishop, 82 Wash.App. at 859, 920 P.2d 214.
In In re Dependency of A.G., 93 Wash. App. 268, 278, 968 P.2d 424 (1998), the court acknowledged the mother's right to counsel at the dependency and termination hearings, but the court found that an order allowing counsel to withdraw at the beginning of trial did not violate the mother's due process rights because the mother's inaction was the cause. She had made no efforts to appear, her whereabouts were unknown, she knew when and where the termination proceeding was being held, and she did not appear at the trial. The court allowed counsel to withdraw because he did not know where his client was or how his client wished to proceed. A.G., 93 Wash.App. at 277-78, 968 P.2d 424. The court reasoned that appointed counsel "could not effectively or ethically represent her." A.G., 93 Wash.App. at 278, 968 P.2d 424.
Other jurisdictions have also addressed whether a parent waived his or her right to appointed counsel. See In re Angela R., 212 Cal.App.3d 257, 260 Cal.Rptr. 612 (1989) (failure to appear was waiver); In re Interest of Bobby Jo S., 10 Conn.App. 36, 521 A.2d 219 (1987) (failure to appear was waiver); Taylor v. Scott, 570 N.E.2d 1333 (Ind.Ct.App.1991) (failure to inform father of his statutory right to counsel required reversal because father *1225 did not knowingly, intelligently, and voluntarily waive his right to counsel even though he had three attorneys throughout process); Keen v. Marion County Dep't of Pub. Welfare, 523 N.E.2d 452 (Ind.Ct.App.1988) (verbal and written advisements of right to counsel and mother's actions indicated a knowing, intelligent, voluntary waiver of right to counsel; court declined to apply criminal law standard); In re Adoption of Olivia, 53 Mass.App.Ct. 670, 761 N.E.2d 536 (2002) (court properly denied father's request for removal of appointed counsel and father waived his right to counsel when he elected to represent himself; father had burden to show by a preponderance of the evidence that his waiver was invalid), review denied, 436 Mass. 1102, 766 N.E.2d 511 (2002); In re Adoption of Holly, 432 Mass. 680, 738 N.E.2d 1115 (2000) (failure to appear was waiver); In re Interest of Cobb, 130 Mich. App. 598, 344 N.W.2d 12 (1983) (following valid waiver of right to counsel, father's request for counsel on day of trial entitled him to counsel because father showed a legitimate reason for the change and that it would not result in an unwarranted disruption of the proceedings); K.D.G.L.B.P. v. Hinds County Dep't of Human Servs., 771 So.2d 907 (Miss.2000) (failure to make timely request for counsel waives statutory right); In re Interest of B____M____P___, 704 S.W.2d 237 (Mo.Ct.App.1986) (request for counsel on day of trial too late to trigger statutory right to counsel); In re Interest of Baby Boy Myers, 58 Or.App. 622, 650 P.2d 113 (1982) (father sufficiently waived his right to counsel when he was informed of that right, was encouraged to obtain or allow the appointment of counsel, and his responses indicated that he understood those rights); In re Interest of KMM, 957 P.2d 296 (Wyo.1998) (failure to file motion for appointed counsel was a waiver of father's rights under the federal and state constitutions).
The record is silent as to how C.E.'s conduct led Backlund to withdraw. Even assuming that C.E.'s conduct caused Backlund to withdraw, and that this conduct was a dilatory tactic or an attempt to hinder the termination proceeding, the record does not show that the court warned C.E. of the consequences of not reforming his conduct. See Bishop, 82 Wash.App. at 859, 920 P.2d 214.
The trial court noted "that the Court Commissioner has previously ruled that no new counsel would be appointed in the dependency proceedings." RP (5/31/01) at 12. But there is no record that, in making this ruling, the court commissioner warned C.E. of the consequences of his actions or of the dangers of self-representation. Further, the court properly ruled at the outset that the dependency proceeding and the termination proceeding were separate proceedings. But the trial court failed to indicate what circumstances warranted a change in its earlier decision to disregard the commissioner's earlier ruling refusing to appoint counsel. The record does not establish that the court made C.E. aware of the risks and disadvantages of self-representation. Moreover, the record does establish that before discussing the matter with attorney Backlund, the trial court indicated that a new attorney would be appointed:
THE COURT: Then, [C.E.], my inquiry to you right now is are you joining in the request that new counsel represent you?
[C.E.] Yes, I am.
RP (5/31/01) at 10. C.E. did not waive his right to counsel by conduct.
In limited circumstances, a defendant may forfeit his right to counsel, irrespective of his knowledge of the consequences of his conduct and his intent to have professional representation. "`Forfeiture' lies at the opposite end of the spectrum" from relinquishment because a defendant does not need to make the waiver knowingly. Bishop, 82 Wash.App. at 858-59, 920 P.2d 214. Consequently, a defendant's conduct resulting in forfeiture must be more severe than conduct sufficient to warrant waiver by conduct. A defendant's conduct must be "extremely dilatory" to result in forfeiture. Bishop, 82 Wash.App. at 859, 920 P.2d 214. For example, "a defendant who is abusive toward his attorney may forfeit his right to counsel." United States v. McLeod, 53 F.3d 322, 325 (11th Cir.1995).
The record does not set out C.E.'s conduct during the dependency or before the *1226 termination hearing. Thus, we cannot determine whether it was "extremely dilatory." While the dependency orders and review hearing orders reveal that two prior attorneys (Vey and Geringer) represented C.E. at these proceedings, there is no clear indication in the record why these attorneys withdrew from representation. Nor does the record indicate why the court commissioner refused to appoint counsel to represent C.E. at the final three review hearings. The record does reveal that C.E. did not ask the court to appoint counsel until the original date of the termination hearing. Consequently, the hearing was delayed 90 days. But, on this record, this behavior alone does not establish forfeiture. See State v. Johnson, 33 Wash.App. 15, 23-25, 651 P.2d 247 (1982) (record illustrates continuing pattern of dilatory conduct), review denied, 99 Wash.2d 1001 (1983).
Similarly, the record does not indicate whether C.E. engaged in conduct that prompted his counsel to move to withdraw on May 31. Although the court ruled that C.E. had rendered Backlund's representation unreasonably difficult, the court did not elaborate further on the reasons for Backlund's motion to withdraw. Without more information in the record, this court is unable to determine that C.E.'s conduct rose to a level justifying forfeiture of his right to counsel. See RCW 13.34.090(2) (unless waived in court, counsel shall be provided to the child's indigent parent if such person has appeared in the proceeding); Bishop, 82 Wash.App. at 860, 920 P.2d 214 (although defendant appeared three times without an attorney after arraignment, having failed to contact the Department of Assigned Counsel to obtain counsel, defendant's inaction held not to constitute forfeiture of right to counsel).
The record does not support a determination that C.E. waived his right to counsel in the termination proceeding through relinquishment, conduct, or forfeiture. Therefore RCW 13.34.090(2) required the court to appoint new counsel after granting Backlund's motion to withdraw. In light of the violation of C.E.'s statutory right to appointed counsel, we do not address the possibility of a parallel constitutional right. Washington State Coalition for the Homeless v. Dep't of Soc. & Health Servs., 133 Wash.2d 894, 932, 949 P.2d 1291 (1997) (the court will not decide an issue on constitutional grounds when that issue can be resolved on statutory or non-constitutional grounds).
We reverse the orders terminating C.E.'s parental rights as to G.E., N.E., and T.E. We remand to the superior court for the appointment of new counsel and for a new termination hearing.
I concur: MORGAN, J.
HUNT, C.J., (dissenting).
I respectfully dissent from the majority's decision reversing termination of C.E.'s parental rights and remanding to the trial court for appointment of a fifth attorney.

I. RIGHT TO COUNSEL
I disagree with the majority's suggestion that waiver of the statutory right to counsel in parental termination cases is similar to waiver of the constitutional right to counsel in criminal cases.
In determining whether a procedure adequately protects due process rights, the court analyzes three elements: (1) the private interest at stake, (2) the risk that the procedure used will result in error and the probable value of additional or substitute procedural safeguards, and (3) the government's interest in the procedure used and the fiscal or administrative burden, if any, if additional safeguards were provided.
In re Dependency of A.G., 93 Wash.App. 268, 278-79, 968 P.2d 424 (1998).
Based on the record here, I would hold that (1) by his own dilatory conduct, C.E. waived his right to be represented by counsel during the termination hearing; and (2) the risk of error in proceeding without counsel was negligible, especially as compared to the government's, and the children's, interest in avoiding undue delay in terminating C.E.'s parental rights, prerequisite to the children's placement in a permanent home.

*1227 II. WAIVER OF RIGHT TO COUNSEL
Although the right to counsel is a preciously guarded right, it is not absolute. As the majority notes, neither RCW 13.34.090 nor the Washington Constitution has been interpreted to require a party's representation by counsel when that party has repeatedly used appointment of counsel as a means to delay the proceedings.[5] Even in criminal proceedings, as the majority recognizes, the right to counsel can be waived expressly, by conduct, or through "extremely dilatory conduct." City of Tacoma v. Bishop, 82 Wash.App. 850, 859, 920 P.2d 214 (1996).
Generally, the right to counsel does not allow a party to "delay a trial either deliberately or inadvertently because he has made little effort to engage an attorney." Bishop, 82 Wash.App. at 856, 920 P.2d 214 (quoting State v. Johnson, 33 Wash.App. 15, 22, 651 P.2d 247 (1982), review denied, 99 Wash.2d 1001 (1983)). Here, although C.E. did not expressly waive his right to counsel at the termination hearing, he effectively waived his right to counsel by his extremely dilatory conduct. For this reason, the trial court did not err in denying C.E.'s last minute request for still another attorney, and its concomitant further delay of the proceedings.

A. PATTERN OF DELAY
C.E. continually engaged in a pattern of dilatory conduct that delayed the statutorilydesignated judicial proceedings to place his children in a safe and permanent home, contrary to the legislative mandate that such proceedings be "speedy." RCW 13.34.020. Over the course of multiple dependency and termination hearings, the trial court appointed C.E. four different attorneys, who represented him seriatim.
C.E.'s inability to work with counsel and his repeated requests for new counsel on the scheduled hearing day had unduly delayed the previous dependency proceedings. His dilatory tactics were so egregious that after C.E. terminated his third attorney, the trial court commissioner declared that he would not appoint C.E. another attorney. Consequently, C.E. did not request a fourth attorney, and he represented himself at several dependency hearings in 2000, the prelude to parental termination.
After the State commenced proceedings to terminate C.E.'s and his wife's parental rights, they both appeared and requested counsel on the day that the termination hearing was scheduled to begin. The State informed the trial court that the dependency commissioner had denied appointment of additional counsel to C.E. because C.E. had repeatedly used requests for new counsel to delay the proceedings. Noting that the commissioner's ruling applied solely to the dependency proceedings, the trial court appointed attorneys for both parents and reluctantly postponed the parental termination hearing for ten weeks to allow new counsel time to prepare.
But ten weeks later, on the day of the rescheduled termination hearing, C.E. again appeared with counsel, who informed the court of his need to withdraw immediately. By failing to attend a previously scheduled hearing on his new attorney's motion to withdraw,[6] C.E. had deliberately delayed resolution of the need for substitute counsel and jeopardized timely adjudication of the previously delayed parental termination petition.
Ruling that there was a "potential conflict" for C.E.'s current attorney, the trial court apparently knew the reason for C.E.'s new counsel's request to withdraw. The trial court further noted that (1) "at least one" of C.E.'s former attorneys also had withdrawn due to "conflict or potential conflict"; (2) this "situation" had led to the commissioner's previous ruling that "no new counsel would be *1228 appointed in the dependency proceeding"; and (3) C.E. had a part in creating the necessity for counsel's sudden withdrawal. Report of Proceedings (RP) (May 31, 2001) at 12. I would hold that these reasons for the trial court's denial of C.E.'s untimely request for new counsel constituted "extremely dilatory conduct" and, therefore, waiver of counsel by C.E.[7]Bishop, 82 Wash. App. at 856, 859, 920 P.2d 214.

B. AWARENESS OF RISK OF PROCEEDING PRO SE
The majority cites Bishop for the proposition that even where a parent waives the right to counsel by extremely dilatory conduct, the record must show that the court warned C.E. of the consequences of failure to reform his conduct. I read Bishop as requiring such a warning only when waiver of counsel is express, not when waiver occurs as a result of the requesting party's conduct, especially extreme dilatory conduct.[8]
Nevertheless, the record shows that C.E. was sufficiently aware of his conduct and the consequences of proceeding without counsel; thus, I address this point. First, C.E. had been previously warned, during the dependency proceedings, that if he again requested new appointed counsel, the commissioner would deny the request; and this is exactly what had happened. From this past experience, C.E. knew about and had encountered the "risks of self-representation," as a result of his repeated seeking of substitute counsel on several occasions during the related dependency proceedings.
Second, on the day of the originally scheduled termination hearing, C.E. was obviously aware that he would have to proceed pro se again unless he obtained new appointed counsel. Thus, he requested, and was granted, appointment of counsel for the termination hearing.
His subsequent dilatory conduct, however, as described below, was abusive toward the legislatively prescribed parental termination process, which the trial court was mandated to pursue "speed[il]y."[9] RCW 13.34.020.

C. UNTIMELY REQUEST FOR NEW COUNSEL
The trial court reluctantly appointed C.E. an attorney on the day that the termination proceeding was to begin and, in so doing, granted a ten-week continuance so that counsel could prepare. But as he had done with his three previous dependency attorneys, C.E. then thwarted both new counsel's representation and his opportunity timely to request still another new attorney.
Knowing that his new (fourth) attorney had filed a motion to withdraw, C.E. was to appear in court with that attorney a week before the termination hearing to resolve this motion. But C.E. failed to appear at the hearing, thus disabling the court's ability to resolve the issue of his representation in a timely fashion. Instead, as was his pattern of conduct, C.E. waited until the day of the already-delayed termination hearing to request substitute counsel. This time, however, the trial court exercised its discretion to proceed with the termination as scheduled.
A parent has a right to a meaningful opportunity to be heard at a hearing to terminate parental rights. But that right is not self-executing. A parent must take reasonable and timely steps to exercise the right to be heard. Here, Robert Mattson failed to timely exercise his right to be heard in the termination hearing. *1229 In re Dependency of M.S., 98 Wash.App. 91, 92, 988 P.2d 488 (1999). Similarly, a parent must take timely steps to exercise his right to counsel. I would hold that C.E. failed to take timely steps to assure his right to counsel at the rescheduled termination hearing.[10]
I see no abuse of discretion in the trial court's refusing to appoint C.E. a fifth attorney under these circumstances. C.E. engaged in a series of previous dilatory actions: (1) creating conflicts with his successive attorneys that induced them to request withdrawal; (2) failing to appear at the hearing specially set to consider counsel's request for withdrawal at least a week before the termination hearing; and (3) once again, asking for appointment of new counsel at the last minute on the day of the rescheduled termination hearingthereby attempting to delay the termination hearing a second time and to thwart the trial court's ability to act in accordance with its statutory mandate for "speedy resolution" of parental termination in order to provide the children a safe, permanent home. RCW 13.34.020. See Bishop, 82 Wash.App. at 858-859, 920 P.2d 214. I would affirm the trial court's carefully considered exercise of control over its courtroom and the termination proceedings entrusted to it for speedy resolution.

III. LACK OF PREJUDICE
Moreover, C.E. has not shown that proceeding without his own attorney prejudiced him at the termination hearing. As in M.S., the risk of error here was minimal. C.E.'s wife was represented by counsel at the same proceeding, and the parental deficiencies were common to both of themfailure to comply with court-ordered services and failure to provide negative urinalysis samples.
Although C.E. asserts multiple errors on appeal, he does not show how the outcome of the termination hearing below would have been different had he had his own independent counsel. Moreover, C.E. has not shown that any of the Lassiter factors apply here: There is no claim that criminal charges could emerge from the termination hearing, no claim that C.E. was unable to interview expert State witnesses, and no claim of any "specially troublesome points of law, either procedural or substantive," suggesting that counsel was necessary, especially in light of the presence of co-counsel for C.E.'s wife. Lassiter v. Dep't of Soc. Servs. of Durham County, N.C., 452 U.S. 18, 32-33, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).
On this record, we cannot say that, had the trial court appointed a fifth attorney for C.E., the termination hearing would have proceeded to resolution in a timely fashion. He had already used a last-minute request for counsel to delay the termination proceedings for two and one-half months. Moreover, had the trial court appointed a new attorney and delayed the proceeding again, C.E.'s past conduct suggests that some conflict with new counsel likely would have arisen and the cycle repeated, with no movement toward final resolution of the parental termination action and his children's future. "[A] child's right to a stable home cannot be put on hold interminably" because of dilatory action by the parent. A.G., 93 Wash.App. at 280, 968 P.2d 424 (quoting In re Dependency of C.R.B., 62 Wash.App. 608, 616, 814 P.2d 1197 (1991)).

IV. RIGHTS OF CHILDREN
Although parental rights are fundamental, they are not the only rights at stake in a *1230 termination action: The children also have rights, and the State has a vital interest in protecting their welfare. The children have a right to speedy establishment of a stable and permanent home where parental action or inaction seriously conflicts with their physical or mental health. M.S., 98 Wash.App. at 95, n. 7, 988 P.2d 488; RCW 13.34.020.[11]See also In re Welfare of Sumey, 94 Wash.2d 757, 762-63, 621 P.2d 108 (1980).
Parental terminations are complex decisions for courts; they involve balancing competing basic interests. C.E.'s children have been waiting in limbo since 1997 for a parental termination decision to open the door to a permanent home. I would defer to the trial court, who observed C.E.'s conduct and demeanor, weighed the competing interests before it, and whose duty it was to carry out the legislative mandate to protect the children, as well as C.E.'s rights. RCW 13.34.020.
I would hold that the trial court did not abuse its discretion in proceeding with the termination hearing without appointing C.E. yet another attorney, which would have necessitated yet another continuance and further delay. I would affirm the trial court's termination of C.E.'s parental rights[12] and allow the children a chance to pursue their lives now, rather than force them to endure more time in limbo awaiting a new termination proceeding in the trial court and another potential appeal.
NOTES
[1] Because several counsel were involved in this matter, we refer to C.E.'s appointed counsel by name for purposes of clarity.
[2] In Washington, parents may also have a constitutional right to appointed counsel in proceedings that may lead to termination of their parental rights. In In re Dependency of Luscier, 84 Wash.2d 135, 524 P.2d 906 (1974), our Supreme Court considered the parent's right to counsel in a permanent child deprivation proceeding and stated that "the parent's right to counsel in this matter is mandated by the constitutional guaranties of due process under the fourteenth amendment to the United States Constitution and article 1, section 3 of the Washington Constitution." 84 Wash.2d at 138, 524 P.2d 906. See also In re Welfare of Myricks, 85 Wash.2d 252, 255, 533 P.2d 841 (1975). But seven years later, in Lassiter v. Dep't of Soc. Servs. of Durham County, N.C., 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the United States Supreme Court declared that the federal constitution provided an indigent parent with an absolute right to counsel only when faced with the deprivation of liberty, and employed a presumption against the right of a parent to appointed counsel in a parental termination proceeding. The Court adopted the standard from Gagnon v. Scarpelli, 411 U.S. 778, 788, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), instructing the trial court to decide whether due process calls for the appointment of counsel using the Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), factors on a case-by-case basis, subject to appellate review.

In 1995, after Lassiter, our Supreme Court addressed whether the legislative mandate that counsel be available at "all stages of a proceeding" included an appeal. In a footnote, the Court observed:
The right to counsel examined here is grounded in statute. RCW 13.34 (dependency cases); RCW 71.09 (sexually violent predator act). We, therefore, find it unnecessary to engage in an analysis of any parallel constitutional right. Whether litigants involved in these kinds of actions also would have a constitutional right to counsel is not before us. We note, however, that this court has determined that an indigent parent in a dependency action has a constitutional right to counsel at trial at public expense. In re Myricks, 85 Wash.2d 252, 255, 533 P.2d 841 (1975); but see Lassiter v. Department of Social Servs., 452 U.S. 18, 31, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)....
Grove, 127 Wash.2d at 229 n. 6, 897 P.2d 1252 (emphasis added).
The Alaska Supreme Court, interpreting article one, section seven of the Alaska Constitution, a provision identical to article one, section three of the Washington Constitution, held that its state constitution provided a right to effective assistance of counsel in termination proceedings. V.F. v. State, 666 P.2d 42, 45 (Alaska, 1983) (no person shall be deprived of life, liberty, or property, without due process of law).
[3] Although the court did not address the question of waiver of counsel, Judge McInturff raised the issue stating, "should either party seek further review, I would urge that the Supreme Court address [the knowing and intelligent waiver of the right to an attorney]." Kevin L., 45 Wash. App. at 494, 726 P.2d 479. Neither party sought further review.
[4] See note 2, infra.
[5] See, e.g., majority at 1224 ("If a defendant engages in dilatory tactics or hinders a proceeding, a court may find that the defendant waived his right to counsel by conduct.") (emphasis added).
[6] C.E. had agreed to be present for a hearing on his counsel's motion to withdraw, set to be heard at least a week before the rescheduled termination hearing date. But because C.E. did not appear at that hearing, the commissioner could not rule on counsel's motion to withdraw; consequently, C.E.'s failure to appear caused counsel's motion to withdraw to be heard on the date of the termination hearing, which had already been continued as a result of his previous request for new counsel ten weeks earlier.
[7] If the trial court had appointed a new attorney, the termination hearing would have had to have been postponed yet again, thereby allowing C.E. to control and to delay further the action's progress, which C.E. had already delayed by two and one-half months.
[8] "Forfeiture [of the right to counsel] can result even though the defendant was not warned about the consequences of his actions or the risks of self-representation, and because of its harsh results requires extremely dilatory conduct." Bishop, 82 Wash.App. at 859, 920 P.2d 214 (citing United States v. Goldberg, 67 F.3d 1092, 1100, 1101 (3rd Cir. 1995)).
[9] Although the majority recognizes that such abuse can constitute forfeiture of right to counsel, I disagree that C.E. did not commit such abuse here.
[10] Although Washington has not specifically addressed whether the untimeliness of a request for counsel can function as a waiver of the right under RCW 13.34.090, other courts have held that delaying a request for counsel waives this right in parental termination proceedings. See, e.g., In re Interest of B____ M____ P____, 704 S.W.2d 237, 249 (Mo.Ct.App.S.D.1986) ("appellant has no excuse for neglecting to timely inform the trial court that he desired to be represented by appointed counsel, and he should not now benefit from his neglect by being awarded a second opportunity to litigate the termination issues"). C.E.'s failure to exercise his right to counsel in a timely fashion, especially in light of repeated, past, similar dilatory behavior and his prior experience with representing himself in the related dependency proceedings, constituted waiver of his right to appointment of new counsel. See In re Dependency of M.S., 98 Wash.App. 91, 92, 988 P.2d 488 (1999).
[11] RCW 13.34.020 provides: "The right of a child to basic nurturing includes the right to a safe, stable, and permanent home and a speedy resolution of any proceeding under this chapter."
[12] The mother's parental rights have already been terminated.