IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of Parental Rights to | ) | No. 34788-5-III |
| | ) | |
| Z.I.M.J. | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |
| | ) | |

FEARING, C.J. — Kevin Johnson appeals from the trial court's termination of his

parental rights to his daughter. He argues that the trial court denied him the right to

counsel. Because Johnson fired his appointed counsel and did not seek substitute

appointed counsel, we reject his argument and affirm the termination.

FACTS

Kevin and Carol Johnson are parents to daughter, Zadela Johnson, born December

13, 2011. All names are pseudonyms. The parents are married, but currently separated.

Both share a history of chronic homelessness, substance abuse, and legal tribulations.

Carol suffers from mental health deficiencies and neurological disorders. Kevin is a

registered sex offender who perpetrated sex acts on a step-daughter.

Carol Johnson provided most care for Zadela. Kevin knew that his wife

chronically abused drugs and that Zadela lived in an unsafe environment, but did nothing to protect his daughter.

The Department of Social and Health Services (DSHS) initiated dependency proceedings as to both parents in May 2015. The trial court appointed Raylene Dowell as guardian ad litem for Zadela Johnson. On June 11, 2015, after a contested hearing, the court found Zadela to be a dependent child as to the mother. DSHS subsequently removed Zadela from her mother's care and placed her into the care of her maternal grandmother, Sherry Corter.

As part of the dependency case, the trial court directed Kevin Johnson to complete the following services: a psychosexual deviancy evaluation, a domestic violence and anger management evaluation and counseling, a substance abuse evaluation and treatment as recommended, and a parenting assessment and parenting education. The trial court also ordered Johnson to obtain housing and maintain contact with DSHS. At a meeting with Darin Peterson, the social worker assigned to Zadela's case, Kevin Johnson declared his intention of rejecting all court-ordered services. Johnson also told his probation officer, Tenille Mortensen, that he wished not to cooperate or speak with Child Protection Services employees.

During the pendency of the dependency proceedings, Darin Peterson unsuccessfully attempted to meet with Kevin Johnson. Johnson lived in a car in changing locations and maintained no means of communication. Peterson mailed letters and court

reports to Johnson's post office box address, none of which were returned. Johnson never responded to Peterson's correspondence.

Kevin Johnson did not utilize all his available court-ordered visitation with Zadela. After initially attending supervised visits for three weeks, Johnson ceased visiting. Instead, he attempted to visit Zadela directly, at her maternal grandmother's home, but the grandmother refused visitation. Johnson informed Tenille Mortensen of his intent to visit Zadela without any supervision. Due to safety concerns for Zadela and her grandmother, probation officer Mortensen added the additional condition to community custody of no direct contact with Zadela. Johnson has not visited his daughter since May 2015.

Kevin Johnson never complied with the court-ordered services. He did not attend an inpatient substance abuse treatment center. Despite some treatment, Kevin consumed alcohol, thereby also repeatedly violating his probation conditions.

Appointed counsel represented Kevin Johnson during the dependency trial. Even though he was granted the opportunity to attend the dependency trial while incarcerated, Johnson refused attendance. On July 23, 2015, the trial court found Zadela to be a dependent child as to Kevin.

### PROCEDURE

On February 23, 2016, DSHS petitioned to terminate Kevin and Carol Johnson's parental rights. After unsuccessfully attempting to personally serve Kevin Johnson,

DSHS served him by publication. On April 13, 2016, the trial court entered an order of default against him. The mother relinquished her parental rights, and the trial court ordered the termination of her parental rights during a hearing on June 22, 2016.

Kevin Johnson appeared at the June 22 hearing and belatedly contested the termination of his parental rights. The trial court then appointed, as counsel for Johnson, the same attorney who represented Johnson during the dependency trial. The trial court scheduled a termination trial for Johnson for August 17, 2016. The record does not disclose whether the trial court vacated the default order against Johnson, and, if not, how he contested the termination of his rights after the court had entered the default judgment against him.

On August 17, 2016, the trial court commenced the termination trial. At the start of trial, Kevin Johnson, through counsel, moved for a continuance until after Johnson's prison release in January 2017. In support of the motion, Johnson argued that his incarceration prevented him from participating in court-ordered services and from demonstrating that he could parent Zadela. DSHS and the guardian ad litem opposed the continuance. The court denied the motion.

During the first day of trial, DSHS called two witnesses: Darin Petersen, the social worker assigned to Zadela's case, and Raylene Dowell, the court-appointed guardian ad litem. Kevin Johnson's counsel cross-examined both witnesses. DSHS' final witness, probation officer Tenille Mortensen, could not testify until the following week.

4

Accordingly, the court continued the remainder of the trial until the following week.

On August 24, 2016, the termination trial resumed. Kevin Johnson's counsel then informed the trial court that Johnson no longer wanted appointed counsel's representation and that Johnson desired a trial continuance to hire his own attorney. After a short recess to review case law, the trial court determined that *In re Dependency of G.G.*, 185 Wn. App. 813, 344 P.3d 234, *review denied*, 184 Wn.2d 1009, 361 P.3d 726 (2015) controlled. Appointed counsel attempted to distinguish the facts of *In re Dependency of G.G.* with the facts of the present case. He explained that Johnson lacked time to seek counsel of his choice because the court scheduled trial a month after Johnson announced his contesting of the termination petition and while Johnson occupied a jail. Counsel also observed that a thirteen month window of time from dependency to termination is common and a few month delay would not be detrimental to Zadela.

Kevin Johnson's counsel could not inform the trial court of any attempts by Johnson to procure substitute counsel. The trial court noted that counsel had been appointed Johnson because of his indigency. On direct questioning from the court, Johnson responded that his grandfather, Herb Troxel, would pay for an attorney. Troxel was not present in the courtroom. A colloquium ensued regarding the feasibility of Johnson procuring money from his grandfather. DSHS questioned the likelihood of financial assistance from Troxel because Johnson previously violated a protection order that identified Troxel as a protected person. Johnson's counsel apprised the court that he

5

previously represented Johnson and Carol Troxel, his grandmother, provided Johnson

with financial support over the years. The guardian ad litem opined that Zadela's best

interest lay in proceeding to trial particularly because of the length of the dependency.

The trial court denied Kevin Johnson's motion to continue the trial, reasoning that:

> The Court appointed [counsel] Mr. Collier on June 24, two months ago. The order was signed June 23. At the beginning of trial on August 17 [Johnson] moved for continuance for approximately six or more months so that he could get out of jail and engage in services, the Court denied that motion, we had a day of trial, now [Johnson] brings a second motion for continuance based on wanting to hire Counsel. He has not interviewed any attorneys, he has not hired any attorneys, he had no [sic] attorney ready to substitute. He says he has the financial ability to pay for an attorney by borrowing from grandfather, Herb and Carol—and grandmother, Herb and Carol Troxel. The Troxels are not here to verify that. Records indicate that the Troxels have been victims of prior criminal behavior by [Johnson]. Mr. Collier indicates that grandmother, Carol Troxel, regardless has financially stood by [Johnson] in the past.
>
> The guardian ad litem and Department [DSHS] are opposed based on best interests of the child. The Court certainly has a duty to control its calendar and to administer justice efficiently, and stopping in the middle of a trial for what would probably amount to a three-month delay is not efficient, by anybody's standards. . . .
>
> I have been offered no evidence of inability to communicate between [Johnson] and Mr. Collier, or any other reason to discharge Mr. Collier. Mr. Collier's one of our most experienced dependency and termination attorneys in this town, and in the Court's opinion does good work.

Report of Proceedings (RP) at 68-70.

Immediately after the trial court denied Kevin Johnson's motion to postpone the

resumption of the termination trial, Johnson fired his counsel and requested to leave the

courtroom. Johnson erupted:

6

> You're fired. Excuse me. I would like to leave now. And can we set it over for another date? I'm done. This is my daughter, this is my life, I want to fire my attorney, I can. That is my right. Is it not?

RP at 70.

The trial court denied Johnson's request to leave and informed him that trial would proceed with counsel on standby for consultation. Johnson responded: "[t]hat's horseshit," "[a]nd you know it is. Do you expect me to sit here and take it like a damn fool? I don't fucking think so." RP at 70-71. The trial court instructed Johnson not to use expletives and warned of contempt charges if he continued with his wordsmithing. A dialogue followed between the trial court and Johnson over his repeated requests to leave the courtroom. The court advised Johnson: "[i]f you want to leave, we will hold the trial in your absence, and, you will not be having an attorney[,] if you fire him[,] to cross examine any of the Department's witnesses." RP at 72. Johnson notified the trial court that he did not want appointed counsel sitting next to him. The trial court directed counsel to remain in the courtroom in the audience to serve as standby counsel.

Trial recommenced with the testimony of DSHS's final witness, Tenille Mortensen, Kevin Johnson's probation officer. Johnson did not cross-examine Mortensen. He said, "I am not an attorney. That's what I've requested to have an attorney here present so they can talk to her." RP at 89. At DSHS's request, the trial court admitted a copy of Johnson's felony judgment and sentence for one count felony harassment and one count unlawful possession of a firearm. Johnson objected, but could

7

not provide the court with a basis for the objection. Johnson responded that "I don't have an attorney." RP at 91. DSHS then rested its case.

The trial court asked Kevin Johnson if he wished to put on any evidence. Johnson answered in the affirmative, but requested a continuance so "for at least a week or two so I can have a chance to read a book and figure out what the hell I'm doing, if not, hire an attorney." RP at 92. He also claimed that "[t]his is the first time today that I have spoke with my attorney." RP at 92. The court reminded Johnson that his appointed counsel continued to be present as standby counsel for consultation. Johnson consulted with counsel. Johnson requested another continuance and the court denied his motion. When asked if there were any witnesses in the courtroom he wished to question, Johnson replied "[n]o, I won't," "[l]et's continue, get it over with." RP at 94. The court declared that Johnson rested his case. The case proceeded to closing argument. At Johnson's request, standby counsel delivered closing argument on his behalf.

The trial court ordered the termination of Kevin Johnson's parental rights to Zadela.

## LAW AND ANALYSIS

On appeal, Kevin Johnson contends the trial court violated his state statutory right to counsel and his federal and state constitutional rights to due process when it required him to represent himself during his termination trial. He argues that the trial court breached his right to counsel when, after the court would not recess the trial for the

8

purpose of his hiring counsel of his choice and before or after he fired appointed counsel, the trial court did not advise him of the risks of self-representation and he never waived or forfeited his right to an attorney. Johnson does not argue that the trial court denied him the right to the choice of his counsel or the right to appear pro se. Johnson does not assign error to the trial court's August 24, 2016, ruling denying a trial continuance.

Kevin Johnson also assigns error to five of the trial court's findings of fact and two conclusions of law entered with the parental termination order. Nevertheless, Johnson devotes no argument to these additional assignments of error other than a footnote stating he challenges the findings because of the denial of his right to counsel. Therefore, we will not address the validity of the findings. This court will not review a claimed error unless it is supported by argument and citation to legal authority. *BC Tire Corp. v. GTE Directories Corp.*, 46 Wn. App. 351, 355, 730 P.2d 726 (1986).

The Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington State Constitution protect a parent's fundamental liberty interest in the care and custody of his or her children. *In re Dependency of V.R.R.*, 134 Wn. App. 573, 581, 141 P.3d 85 (2006). The State also has a compelling interest in protecting the physical, mental, and emotional health of the children. *In re Dependency of V.R.R.*, 134 Wn. App. at 581.

Recognizing the significant interests involved in the termination of parental rights, the law guarantees a parent the right to counsel and to appointment of counsel, if

9

No. 34788-5-III
*In re Parental Rights to Z.I.M.J.*

indigent. *In re Dependency of Grove*, 127 Wn.2d 221, 231-32, 897 P.2d 1252 (1995); *In re Dependency of E.P.*, 136 Wn. App. 401, 408, 149 P.3d 440 (2006), *review granted*, 161 Wn.2d 1014, 171 P.3d 1057 (2007). The Washington Constitution guarantees the appointment of counsel for a parent. *In re Welfare of Luscier*, 84 Wn.2d 135, 138, 524 P.2d 906 (1974). A Washington statute implements this right. RCW 13.34.090 reads, in relevant part:

> (1) Any party has a right to be represented by an attorney in all proceedings under this chapter, to introduce evidence, to be heard in his or her own behalf, to examine witnesses, to receive a decision based solely on the evidence adduced at the hearing, and to an unbiased fact finder.
> (2) At all stages of a proceeding in which a child is alleged to be dependent, the child's parent, guardian, or legal custodian has the right to be represented by counsel, and if indigent, to have counsel appointed for him or her by the court. Unless waived in court, counsel shall be provided to the child's parent, guardian, or legal custodian, if such person (a) has appeared in the proceeding or requested the court to appoint counsel and (b) is financially unable to obtain counsel because of indigency.

The controlling lengthy question in this appeal is whether the trial court defaulted on its obligation to provide Kevin Johnson appointed counsel, when (1) the court appointed counsel at the onset of the termination proceeding, (2) Johnson, on the second day of trial, sought a trial postponement in order to hire new counsel despite being unable to assure the trial court that he could hire new counsel, (3) Johnson raised no complaint about appointed counsel's performance or an inability to communicate with appointed counsel, and (4) the trial court never authorized withdrawal of appointed counsel.

10

Kevin Johnson contends that the trial court "required" and "forced" him to represent himself. Johnson also maintains that the trial court "removed" his attorney during trial without appointing substitute counsel. We disagree with these factual contentions. The trial court appointed able counsel to represent Johnson. Johnson terminated the services of appointed counsel without proffering a reason, let alone a good reason. Johnson's appointed counsel never sought an order allowing him to withdraw, and the trial court never entered an order approving withdrawal of counsel. Instead, Johnson fired his attorney. The circumstances under which Johnson fired his appointed counsel suggest the firing was a ruse in order to gain a trial continuance. Johnson did not ask the trial court to appoint new counsel. Johnson wished to hire his own attorney, but failed to show an ability to pay for one. The trial court did not order self-representation. Johnson chose self-representation. Appointed counsel remained in the courtroom to assist Johnson and even delivered the summation for Johnson.

Kevin Johnson relies on *In re Welfare of G.E.*, 116 Wn. App. 326, 65 P.3d 1219 (2003) when contending that the trial court erred in removing appointed counsel and refusing to appoint a new attorney thereby forcing him to represent himself during the trial. To repeat, we disagree that the trial court removed appointed counsel. We, nevertheless, review and analyze Johnson's designated decision.

In *In re Welfare of G.E.*, this court determined that the trial record did not support a finding that the father waived his right to counsel through relinquishment, conduct, or

forfeiture. The trial court appointed three different attorneys to represent the father during two dependency proceedings. When the trial court granted the third attorney's motion to withdraw, the court entered an order declaring that the court would not appoint another attorney. The State later initiated proceedings to terminate the father's parental rights. On the first day of the termination trial, the father requested a court appointed attorney. The trial court granted the father's motion, appointed counsel, and granted a continuance of the termination trial. When the termination trial resumed two months later, the father's attorney asked to withdraw based on ethical concerns. The trial court granted the attorney's request to withdraw over the father's objections and required him to proceed pro se. The father told the court he did not understand the nature of the proceedings and needed legal representation. The trial court did not explain the ramifications of one representing himself or warn the father of the consequences of not reforming his conduct.

Based on our previous recitation of facts and our phrasing of the issue on appeal, the reader may surmise the distinctions we render between the facts in *In re Welfare of G.E.* and the facts in this appeal. Unlike the appointed attorney in *In re Welfare of G.E.*, Kevin Johnson's appointed counsel did not withdraw. Johnson's counsel represented him in his termination trial through the first day of trial with no complaint from Johnson. Johnson fired him on the second day of trial when the trial court denied his continuance to retain private counsel. While Johnson expressed his desire to hire an attorney, he was

12

unable to demonstrate his ability to retain private counsel. Neither counsel nor Johnson mentioned to the court any discord in the attorney-client relationship or otherwise provided a reason for discharging appointed counsel.

Whereas we agree with Kevin Johnson that the trial court did not fully inform him of the risks and disadvantages of self-representation, we conclude the circumstances did not require a warning. We also agree with Johnson's account of the law as requiring a fully informed waiver of the right to counsel after a warning of the consequences of self-representation or extremely dilatory conduct before a trial court may deny a parent the right to counsel. *In re Welfare of G.E.*, 116 Wn. App. at 334 (2003). Nevertheless, the trial court never declined appointment of counsel. Therefore, waiver is irrelevant. Johnson fired his appointed counsel and never requested appointment of substitute counsel. Johnson never requested to represent himself pro se. Despite the firing of counsel, the trial court directed appointed counsel to remain present during trial and assist Johnson.

DSHS suggests that the background in *In re the Dependency of G.G.*, 185 Wn. App. 813 (2015) echoes the facts in our appeal. We agree.

The trial court in *In re Dependency of G.G.* denied the mother's motion for a continuance to hire private counsel. At a preliminary hearing six days before the scheduled termination trial, DSHS's counsel noted that the mother, Itzel Salazar, may have concerns about her appointed counsel. The trial court declined to entertain any

13

concerns because Salazar filed no motion. When the parties appeared for the first day of trial, Salazar's appointed attorney reported to the court that Salazar contacted her the day before the preliminary hearing and asked her to make a motion to withdraw. Salazar's attorney stated she spoke with her client after the preliminary hearing and Salazar reiterated her desire for counsel to withdraw in addition to seeking a trial continuance to hire substitute counsel. On questioning by the court, Salazar stated she did not feel well represented. Salazar informed the court she met with one lawyer she did not wish to hire, but planned to interview two more that week. She could not name the lawyers. The trial court denied the motion of counsel to withdraw and Salazar's motion for a trial continuance.

On appeal, Itzel Salazar argued that the trial court deprived her of her right to counsel of choice when the trial court denied her a trial continuance. This court agreed that a parent is entitled to counsel of her choice, but rejected the appeal nonetheless. This court observed that Salazar filed no motion to substitute counsel and had not reached any agreement with any attorney to represent her in the termination trial. This court expressed concern that Salazar only sought to delay the trial.

As in *In re Dependency of G.G.*, Kevin Johnson did not forward a motion to substitute counsel. Johnson had yet to meet with any attorney, let alone possess a name of an attorney who might assist. He had not reached any agreement with any attorney to represent him. The person who allegedly would assist in paying the attorney had a

14

No. 34788-5-III
*In re Parental Rights to Z.I.M.J.*

restraining order against Johnson. Appointed counsel was an experienced and competent counsel in termination cases. Unlike in *In re Dependency of G.G.*, Johnson had not even expressed dissatisfaction of appointed counsel. Johnson never directed his attorney to withdraw.

## CONCLUSION

We affirm the trial court's termination of Kevin Johnson's rights to his daughter, Zadela. The trial court did not infringe on Johnson's right to counsel.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, J.

15